# EXHIBIT 2



IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA



DISTRICT COURT FILED
SEP 2 5 2019
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

| | |
|---|---|
| MARYLYN STROME,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CSAA INSURANCE EXCHANGE;<br>CSAA FIRE AND CASUALTY<br>INSURANCE COMPANY d/b/a AAA<br>FIRE AND CASUALTY INSURANCE<br>COMPANY; and CSAA INSURANCE<br>SERVICES, INC.,<br><br>　　　　Defendants. | Case No.: CJ-2019-1321<br><br>ATTORNEYS LIEN CLAIMED |

## FIRST AMENDED PETITION

**COMES NOW** the Plaintiff, Marylyn Strome, and for her First Amended Petition against Defendants, CSAA Insurance Exchange, CSAA Fire and Casualty Insurance Company d/b/a AAA Fire and Casualty Insurance Company, and CSAA Insurance Services, Inc., alleges and states as follows:

### JURISDICTION AND VENUE

1. Plaintiff, Marylyn Strome ("Plaintiff"), is a citizen of the State of Oklahoma and resident of Tulsa County.

*CSAA Insurance Exchange*

2. Defendant, CSAA Insurance Exchange, is an unincorporated association organized under the laws of the State of California and is a reciprocal insurance exchange.

3. As a reciprocal insurance exchange, CSAA Insurance Exchange is owned by its members and is a citizen of every state in which it has members, including Oklahoma.

p

### *CSAA Insurance Services, Inc.*

4.  Defendant, CSAA Insurance Services, Inc. ("CSAA Insurance Services"), is a foreign corporation originally known as CSAA Insurance Services, LLC. CSAA Insurance Services, LLC was organized under the laws of California on December 16, 2013 and commenced business on June 6, 2014.

5.  On November 19, 2015, the California Department of Insurance approved an amended certificate of authority and rules and regulations to reflect the conversion of CSAA Insurance Services from a limited liability company to a corporation.

6.  CSAA Insurance Services' principal place of business as registered with the California Secretary of State is 3055 Oak Road, Walnut Creek, California 94597.

7.  However, a significant number of CSAA Insurance Services employees are in Oklahoma City, Oklahoma.

8.  Numerous high-ranking officers, claims managers and supervisors employed by CSAA Insurance Services are in Oklahoma City, Oklahoma, including the senior vice president of claims for CSAA Insurance Services, the national catastrophe manager, senior homeowners claims managers and national catastrophe supervisors.

9.  The activities of CSAA Insurance Services are directed, controlled and coordinated by these high-ranking officers, managers and supervisors in Oklahoma City, Oklahoma.

10. A significant portion of the claims for all insurer members of the CSAA Insurance Group are handled by employees of CSAA Insurance Services in Oklahoma City, Oklahoma.

11. The "nerve center" and principal place of business of CSAA Insurance Services pursuant to the United States Supreme Court's decision in *Hertz Corporation v. Friend, et al.*, 559 U.S. 77 (2010) is in Oklahoma City, Oklahoma.

### *CSAA Fire and Casualty Insurance Company*

12.     Defendant, CSAA Fire and Casualty Insurance Company ("CSAA Fire and Casualty") is a foreign insurer originally incorporated in Alaska on October 10, 1997 as AAA Mountain West Insurance Company. AAA Mountain West Insurance Company changed its name to ACA Insurance Company on December 1, 2003. ACA Insurance Company re-domiciled from Alaska to Indiana effective December 31, 2008. ACA Insurance Company changed its name to CSAA Fire and Casualty Company effective January 8, 2014.

13.     CSAA Fire and Casualty Insurance Company's principal place of business as listed in its statutory annual statement for the year ended 2017 is Indianapolis, Indiana.

14.     Venue is proper under 12 O.S. § 137.

### FACTUAL BACKGROUND

15.     Plaintiff maintained hail and wind coverage under her homeowner's insurance policy (Policy No. HO33478748) that covered the replacement cost value for damaged roof surfacing.

16.     On or about April 4, 2017, Plaintiff sustained significant hail and wind damage to her roof.

17.     On October 30, 2018, Plaintiff properly and timely submitted a claim (Claim No. 1002-95-7061) for the damage resulting from the wind and hail damage, and contacted Perfection Roofing, an independent contractor, to get an estimate to repair the damage to her roof.

18.     Plaintiff's insurance policy was issued by CSAA Fire and Casualty. However, Plaintiff's claim was not adjusted by CSAA Fire and Casualty.

19.     On November 6, 2018, Field Adjuster Nathan Fulks ("Fulks") "inspected" Plaintiff's property and generated an estimate of Plaintiff's loss.

20.     Fulks was an employee of CSAA Insurance Services.

3

21.     Sometime after Plaintiff filed her claim, one or more employees of CSAA Insurance Services retained Hancock Claims Consultants to inspect Plaintiff's property and reaffirm the estimate generated by Fulks.

22.     On November 7, 2018, one or more employees of CSAA Insurance Services authorized a lowball payment for repairs to Plaintiff's roof in the amount of $694.47.

23.     Plaintiff's roofer, Perfection Roofing, inspected Ms. Strome's roof on November 8, 2018, and determined the roof was severely damaged by hail. Perfection Roofing estimated the damage to be approximately $25,000.00. Perfection Roofing concluded the amount offered to Ms. Strome for her claim woefully underestimated the cost to correctly repair her roofing surfaces.

24.     On December 7, 2018, Plaintiff provided a repair estimate from Perfection Roofing to an employee of CSAA Insurance Services and requested that her claim be reconsidered and properly paid.

25.     On January 2, 2019, an employee of CSAA Insurance Services reaffirmed its position that it would not pay more than $694.47.

## COUNT I: BREACH OF CONTRACT AGAINST
## CSAA FIRE AND CASUALTY INSURANCE COMPANY

26.     Plaintiff fully incorporates into this Paragraph each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein.

27.     Plaintiff entered into a contract of insurance with CSAA Fire and Casualty to provide replacement cost value for wind and hail damage to her property. Plaintiff's homeowner's policy with CSAA Fire and Casualty was in full force and effect at all material times hereto.

28.     Plaintiff provided proper and timely notice to CSAA Fire and Casualty of her claim arising from wind and hail damage that occurred to her home.

29. Plaintiff has in all material ways complied with the terms and conditions of the policy.

30. CSAA Fire and Casualty, however, has breached its contractual obligations under the terms and conditions of the insurance contract with Plaintiff by failing to properly investigate Plaintiff's claim and pay Plaintiff all benefits to which she is entitled under the terms and conditions of the policy.

31. As a result of CSAA Fire and Casualty's breach of contract and other wrongful conduct, Plaintiff has sustained financial losses, mental and emotional distress and have been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

### COUNT II: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING AGAINST CSAA INSURANCE EXCHANGE, CSAA INSURANCE SERVICES, INC. AND CSAA FIRE AND CASUALTY INSURANCE COMPANY

32. Plaintiff fully incorporates into this paragraph each and every allegation contained in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein.

#### *CSAA Fire and Casualty Insurance Company*

33. CSAA Fire and Casualty has a non-delegable duty of good faith and fair dealing to Plaintiff.

34. CSAA Fire and Casualty did not deal fairly and in good faith with Plaintiff by engaging in the following acts and omissions:

    a. CSAA Fire and Casualty failed to perform a proper investigation regarding Plaintiff's claim made under her homeowner's policy.

    b. CSAA Fire and Casualty refused, without proper cause, to pay Plaintiff all benefits she is owed under the insurance contract and pursuant to Oklahoma law.

  c. CSAA Fire and Casualty has no reasonable basis in its refusal to recognize and pay Plaintiff her benefits owed under the policy for damages caused by wind and hail damage.

  d. CSAA Fire and Casualty knowingly and intentionally failed to engage in proper claims handling practices and failed to compensate its insured losses covered under its homeowner's insurance policy.

  e. CSAA Fire and Casualty engaged in these improper claim practices knowing that its insureds would suffer financial harm.

  f. CSAA Fire and Casualty intentionally engaged in an outcome-oriented investigation.

  g. CSAA Fire and Casualty put its interest in maximizing financial gains and limiting disbursements above the interests of the Plaintiff.

  h. CSAA Fire and Casualty was unjustly enriched by knowingly providing less coverage to Plaintiff without decreasing the premium payment owed to AAA.

35. As a consequence of CSAA Fire and Casualty's breach of the duty of good faith and fair dealing, Plaintiff have sustained damages, including deprivation of monies rightfully belonging to her, anger, stress, worry, physical and emotional suffering, attorney fees and litigation costs.

36. The conduct of CSAA Fire and Casualty was intentional, willful, malicious, and/or in reckless disregard of the rights of others.

37. The actions of CSAA Fire and Casualty during the handling of Plaintiff's claim demonstrate it intentionally, and with malice, breached its duty to deal fairly and in good faith. The actions of Defendant CSAA Fire and Casualty were not isolated events, but rather were

consistent with an overall collective corporate goal of increasing profits through the systematic reduction or avoidance of claims. Plaintiff therefore seek punitive damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

### *CSAA Insurance Services, Inc.*

38. CSAA Insurance Services is a wholly owned subsidiary of CSAA Insurance Exchange.

39. CSAA Insurance Services also serves as the attorney-in-fact for CSAA Insurance Exchange.

40. CSAA Insurance Services is not itself an insurance company. However, CSAA Insurance Services adjusts all claims for all member companies of the CSAA Insurance Group, including CSAA Fire and Casualty.

41. Plaintiff's claim was adjusted by employees of CSAA Insurance Services.

42. CSAA Insurance Services houses all personnel, operations and administrative functions for the insurer members of the CSAA Insurance Group, including CSAA Fire and Casualty. Such activities include administration, human resources (including benefit plan assets, liabilities and plan sponsorship), insurance operations, finance, information technology, sales, marketing, and legal functions.

43. The officers of CSAA Insurance Exchange receive incentive-based compensation based on the financial performance of CSAA Insurance Exchange and its member companies.

44. The president and chief executive officer of CSAA Insurance Exchange, chief financial officer and treasurer of CSAA Insurance Exchange and the chief legal officer and secretary of CSAA Insurance Exchange all serve as officers and directors of CSAA Insurance Services.

45. Employees of CSAA Insurance Services participate in an incentive plan that awards bonuses based on the profitability of CSAA Insurance Exchange and its member companies as well as individual performance.

46. The principal way claims personnel employed by CSAA Insurance Services can exercise influence over the profitability of CSAA Insurance Exchange and its member companies is through the reduction or elimination of claims payments.

47. Given the compensation structure of the executives and employees of CSAA Insurance Exchange and CSAA Insurance Services, there exists the power, motive and opportunity for the executives and employees of CSAA Insurance Services to act unscrupulously.

48. For the foregoing reasons, there is a special relationship between CSAA Insurance Services and Plaintiff that gives rise to the duty of good faith and fair dealing pursuant to *Wathor v. Mut. Ins. Administrators, Inc.*, 87 P.3d 559 (Okla. 2004); and *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793 (10th Cir. 1995).

49. CSAA Insurance Services did not deal fairly and in good faith with Plaintiff by engaging in the following acts and omissions:

   a. CSAA Insurance Services failed to perform a proper investigation regarding Plaintiff's claim made under her homeowner's policy.

   b. CSAA Insurance Services refused, without proper cause, to pay Plaintiff all benefits she is owed under the insurance contract and pursuant to Oklahoma law.

   c. CSAA Insurance Services has no reasonable basis in its refusal to recognize and pay Plaintiff her benefits owed under the policy for damages caused by wind and hail damage.

8

d.  CSAA Insurance Services knowingly and intentionally failed to engage in proper claims handling practices and failed to compensate its insured losses covered under its homeowner's insurance policy.

e.  CSAA Insurance Services engaged in these improper claim practices knowing that its insureds would suffer financial harm.

f.  CSAA Insurance Services intentionally engaged in an outcome-oriented investigation.

g.  CSAA Insurance Services put its interest in maximizing financial gains and limiting disbursements above the interests of the Plaintiff.

50. As a consequence of CSAA Insurance Services' breach of the duty of good faith and fair dealing, Plaintiff have sustained damages, including deprivation of monies rightfully belonging to her, anger, stress, worry, physical and emotional suffering, attorney fees and litigation costs.

51. The conduct of CSAA Insurance Services was intentional, willful, malicious, and/or in reckless disregard of the rights of others.

52. The actions of CSAA Insurance Services during the handling of Plaintiff's claim demonstrate it intentionally, and with malice, breached its duty to deal fairly and in good faith. The actions of Defendant CSAA Insurance Services were not isolated events, but rather were consistent with an overall collective corporate goal of increasing profits through the systematic reduction or avoidance of claims. Plaintiff therefore seek punitive damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

### *CSAA Insurance Exchange*

53. CSAA Insurance Exchange is the ultimate parent of an insurance holding group known as the CSAA Insurance Group.

54. CSAA Fire and Casualty and CSAA Insurance Services are both wholly owned subsidiaries of CSAA Insurance Exchange.

55. CSAA Insurance Exchange has no employees, although it does maintain officers and directors.

56. The officers and directors of CSAA Insurance Exchange direct, control and coordinate the actions of all members of the CSAA Insurance Group, including CSAA Fire and Casualty and CSAA Insurance Services.

57. The officers and directors of CSAA Insurance Exchange serve in a dual capacity as officers and directors of members of the CSAA Insurance Group, including CSAA Fire and Casualty and CSAA Insurance Services, and actively participate in the management of these companies.

58. For example, the president and chief executive officer of CSAA Insurance Exchange, chief financial officer and treasurer of CSAA Insurance Exchange and the chief legal officer and secretary of CSAA Insurance Exchange all serve as officers and directors of CSAA Insurance Services.

59. The officers of CSAA Insurance Exchange receive incentive-based compensation based on the financial performance of CSAA Insurance Exchange and its member companies.

60. The principal way executives of CSAA Insurance Exchange can exercise influence over the profitability of CSAA Insurance Exchange and its member companies is through the reduction or elimination of claims payments.

61. The officers and directors of CSAA Insurance Exchange establish policies and procedures to increase the profitability of CSAA Insurance Exchange and its insurer members at the expense of policyholders.

62. The wrongful acts and omissions of CSAA Insurance Services with respect to the Plaintiff's claim in this case were motivated by improper policies and procedures designed and implemented by officers and directors of CSAA Insurance Exchange.

63. Given the compensation structure of the executives of CSAA Insurance Exchange and the degree of control exercised over CSAA Fire and Casualty and CSAA Insurance Services by the officers and directors of CSAA Insurance Exchange, there exists the power, motive and opportunity for CSAA Insurance Exchange to act unscrupulously.

64. For the foregoing reasons, there is a special relationship between CSAA Insurance Exchange and Plaintiff that gives rise to the duty of good faith and fair dealing pursuant to *Wathor v. Mut. Ins. Administrators, Inc.*, 87 P.3d 559 (Okla. 2004); and *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793 (10th Cir. 1995).

65. CSAA Insurance Exchange did not deal fairly and in good faith with Plaintiff by engaging in the following acts and omissions:

    a. CSAA Insurance Exchange established policies and procedures which encourage and reward the systematic reduction, delay, or avoidance of the payment of legitimate claims.

    b. CSAA Insurance Exchange established executive compensation plans to provide incentives to executives of CSAA Insurance Exchange, CSAA Fire and Casualty and CSAA Insurance Services to arbitrarily reduce claim payments.

    c. CSAA Insurance Exchange encouraged and rewarded the wrongful acts and omissions of CSAA Fire and Casualty and CSAA Insurance Services that harmed the Plaintiff in this case.

66. As a consequence of CSAA Insurance Exchange's breach of the duty of good faith and fair dealing, Plaintiff have sustained damages, including deprivation of monies rightfully belonging to her, anger, stress, worry, physical and emotional suffering, attorney fees and litigation costs.

67. The conduct of CSAA Insurance Exchange was intentional, willful, malicious, and/or in reckless disregard of the rights of others.

68. The actions of CSAA Insurance Exchange during the handling of Plaintiff's claim demonstrate it intentionally, and with malice, breached its duty to deal fairly and in good faith. The actions of Defendant CSAA Insurance Exchange were not isolated events, but rather were consistent with an overall collective corporate goal of increasing profits through the systematic reduction or avoidance of claims. Plaintiff therefore seek punitive damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs, interest, reasonable attorney fees, and other relief that this Court deems just and equitable.

Respectfully submitted,


Reggie N. Whitten, OBA #9576
Michael Burrage, OBA #1350
J. Revell Parrish, OBA #30205
**WHITTEN BURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73103
Telephone: (405) 516-7800
Facsimile: (405) 516-7859

And

_____
Brian E. Dittrich, OBA #14934
DITTRICH LAW FIRM, PLLC
101 Park Avenue, Suite 1300
Oklahoma City, OK 73102
(855) 494-6700 Telephone
(855) 494-6701 Facsimile
**ATTORNEYS FOR PLAINTIFF**

**ATTORNEY LIEN CLAIMED**

13