# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARYLYN STROME, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-573-CVE-FHM |
| | ) | (formerly Tulsa County |
| CSAA INSURANCE EXCHANGE; | ) | Case No. CJ-2019-1321) |
| CSAA FIRE AND CASUALTY | ) | |
| INSURANCE COMPANY d/b/a AAA | ) | |
| FIRE AND CASUALTY INSURANCE | ) | |
| COMPANY; and CSAA INSURANCE | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO REMAND
## AND BRIEF IN SUPPORT

**GERARD F. PIGNATO (OBA NO. 11473)**
**MATTHEW C. KANE (OBA NO. 19502)**

Of the Firm:
**RYAN WHALEY COLDIRON JANTZEN**
**PETERS & WEBBER PLLC**
400 North Walnut Avenue
Oklahoma City, Oklahoma  73104
Telephone:  (405) 239-6040
Facsimile:  (405) 239-6766
jerry@ryanwhaley.com
mkane@ryanwhaley.com

ATTORNEYS FOR DEFENDANTS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

  I.   **This Court's Recent Determination in *DeSmet v CSAA Insurance Exchange* is Dispositive** ............................................................................................................... 2

  II.  **Plaintiff's Unavailing Reliance on *McDonald*** .............................................. 5

  III.  **Plaintiff's Efforts to Destroy Corporate Distinctions are Unsupported by Fact or Law** ........................................................................................................................... 6

    *A.*  ***The Corporate Structure of the Exchange and its Affiliates*** ....................... 7

    *B.*  ***Plaintiff's "Evidence" does not Indicate that She is a Member of the Exchange or Conflict with the Affidavits Presented by Defendants*** .................. 9

      *1.*  *Excerpt from McDonalds' Claim File* ................................................... 10

      *2.*  *Interview of Former California State Automobile Association CEO* ........ 10

      *3.*  *The CSAA Insurance Group Website* ..................................................... 11

      *4.*  *Rules and Regulations of the Insurance Board of CSAA Insurance Exchange* ......... 12

      *5.*  *CSAA General Insurance Company Auto Policy and Renewal Letter* ...................... 14

      *6.*  *AAA Oklahoma Membership Handbook* .................................................. 14

  **CONCLUSION** ........................................................................................................ 17

# **TABLE OF AUTHORITIES**

## **Cases**

*Andrews v. Heaton*,
    483 F.3d 1070 (10th Cir. 2007)..................................................................... 4

*Baker v. Dir., U.S. Parole Comm'n*,
    916 F.2d 725 (D.C. Cir.1990) ...................................................................... 4

*Barnes v. Okla. Farm Bureau Mut. Ins. Co.*,
    2000 OK 55, 11 P.3d 162 .............................................................................. 3

*Bill G. Perry Family Design, Inc. v. Mashburn Faires Homes*, L.L.C.,
    2015 WL 4042180 (W.D. Okla. 2015)......................................................... 17

*Boatright Family, LLC v. Reservation Center, Inc.*,
    CIV-13-192-D, 2015 WL 2345299 (W.D. Okla. May 14, 2015) ............................. 17

*Braden v. Hendricks*,
    1985 OK 14, 695 P.2d 1343 ......................................................................... 16

*Christian v. Am. Home Assur., Co.*,
    1977 OK 141, 577 P.2d 899 ........................................................................... 3

*Cloud v. Illinois Ins. Exchange*,
    701 F.Supp. 197 (W.D. Okla. Dec. 2, 1988)................................................. 4

*DeSmet v. CSAA Insurance Exchange et al.*,
    19-CV-0624-CVE-JFJ, [Dkt. No. 17] (N.D. Okla. Dec. 27, 2019) .................. passim

*Gruenberg v. Aetna Ins. Co.*,
    510 P.2d 1032 (Cal 1973) .............................................................................. 3

*Huxall v. First State Bank*,
    842 F.2d 249 (10th Cir.1988)........................................................................ 4

*Kingsbury v. Westlake Management Co.*, CIV-14-468-M, 2015 WL 13189663 (W.D. Okla. Dec.
    22, 2015)....................................................................................................... 17

*McDonald v. CSAA Ins. Exch.*,
    No. CIV-16-336-R, 2017 WL 887108 (W.D. Okla. Mar. 6, 2017) .................. passim

*McKinney v. State of Okla., Dept. of Human Servs., Shawnee, OK*,
    925 F.2d 363 (10th Cir.1991)........................................................................ 4

*Newport v. USAA*,
    2000 OK 59, 11 P.3d 190 .............................................................................. 3

*Racher v. Westlake Nursing Home Ltd. Partnership*,
    2014 WL 2003041 (W.D. Okla. 2014)......................................................... 17

*Spears v. Shelter Mut. Ins. Co.*,
    2003 OK 66, 73 P.3d 865 ............................................................................ 16

*St. Paul Reinsurance Co. v. Club Services Corp.*,
    30 Fed. App'x 834 (10th Cir. 2002) (unpublished)................................. 3, 4

*Timmons v. Royal Globe Ins. Co.*,
    1982 OK 97, 653 P.2d 907 ............................................................................ 3

*United Adjustment Services, Inc. v. Professional Insurors Agency, LLC,*
   2013 OK CIV APP 67, 307 P.3d 400 ........................................................................... 4

*Warthor v. Mut. Assur. Adm'rs, Inc.,*
   2004 OK 2, 87 P.3d 559 ............................................................................................. 3

**Statutes**

12 O.S. § 682 ................................................................................................................. 17
12 O.S. § 682(B) ...................................................................................................... 16, 17
36 O.S. § 1631(5) ............................................................................................................ 8
36 O.S. § 2901 ................................................................................................................. 7
36 O.S. § 2902 ................................................................................................................. 7
36 O.S. § 2909 ................................................................................................................. 7

**Other Authorities**

Cal. Ins. Code § 1215 ...................................................................................................... 8
Cal. Ins. Code § 1280 ...................................................................................................... 7

Defendants removed this matter based on complete diversity. Plaintiff is a citizen of Oklahoma. First Amended Petition [Dkt. 2-2], at ¶ 1. As discussed herein and in the Notice of Removal [Dkt. No. 2],[1] each Defendant is diverse, and Plaintiff has alleged damages in excess of the statutory minimum for diversity jurisdiction.

Plaintiff nonetheless argues remand is proper because, according to Plaintiff, CSAA Insurance Exchange ("Exchange") is a citizen of the State of Oklahoma. *See* Plaintiff's Motion to Remand ("Motion") [Dkt. No. 17] at 7 ("Defendants have failed to establish the Exchange is a diverse defendant."). However, as this Court has recently determined in *DeSmet v. CSAA Insurance Exchange et al.,* 19-CV-0624-CVE-JFJ, [Dkt. No. 17] (N.D. Okla. Dec. 27, 2019), a copy of which is attached hereto as Exhibit 1, the Exchange is not a proper party to the litigation as it did not enter into a policy of insurance with Plaintiff.

Moreover, even ignoring such a determination, the Exchange has established it is not a citizen of Oklahoma. *See, e.g.,* [Dkt. No. 2-11], and Affidavit of Jared Peterson, attached hereto as Exhibit 2. In *McDonald v. CSAA Ins. Exch.*, No. CIV-16-336-R, 2017 WL 887108, at *2 (W.D. Okla. Mar. 6, 2017), Judge Russell examined whether the Exchange was a citizen of Oklahoma and ultimately identified precisely what was necessary for Defendants to prove diversity. The linchpin – the sole reason that case was remanded – was that Defendants only established "the fact that a policy may be written in California" and that fact alone "does not foreclose that one or more subscribers is a citizen of Oklahoma for purpose of diversity jurisdiction." *Id.* Here, Defendants

---

[1] In Plaintiff's First Amended Petition [Dkt. No. 2-2], she made repeated claims that CSAA Insurance Services, Inc. ("Services") was also a citizen of Oklahoma for diversity purposes. Defendants established Services was not a citizen of Oklahoma in the Notice of Removal. [Dkt. No. 2], ¶ 5 and Exs. 11 and 12. Apparently conceding this issue, Plaintiff has not raised any argument or presented any evidence in her Motion to Remand that Services defeats diversity. Plaintiff does not allege CSAA Fire is a citizen of Oklahoma.

have provided precisely what the *McDonald* Court sought – proof that the Exchange does not have subscribers in Oklahoma. *See* [Dkt. No. 2-11] at ¶ 3; Exhibit 2, ¶¶ 3-4. Without any plausible legal or factual basis, Plaintiff also contends – but cannot prove – that every insured under a CSAA affiliated entity is also a subscriber of the Exchange. As a result, Defendants have established federal diversity jurisdiction exists and Plaintiff's Motion should be denied.

**I.   This Court's Recent Determination in *DeSmet v CSAA Insurance Exchange* is Dispositive.**

In light of this Court's recent decision in *DeSmet*, these issues are easily resolved.   In denying the plaintiff's Motion to Remand, this Court determined:

> Plaintiff asserts two claims for relief against AAA Insurance in his state court petition: (1) breach of contract and (2) breach of the duty of good faith and fair dealing. Dkt. # 2-2, at 4-6. To assert these claims against CSAA Insurance Exchange, plaintiff would be required to prove that CSAA Insurance Exchange is a party to his Policy. See Miller v. BCG Healthcare Investments LLC, 2012 WL 12863169, at *1 (W.D. Okla. Sept. 11, 2012) ("Ordinarily, a person or entity not a party to a contract cannot breach that contract."); see also Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1115 at n.9 (Okla. 2005) ("The tort [of bad faith] does not inure to the benefit of one who is not a party to the contract."); Hensley v. State Farm Fire and Cas. Co., 398 P.3d 11, 18 (Okla. 2017) ("[T]his duty was not extended to an individual who was not a party to the contract, and non-insurer defendants did not possess this duty: an action based on the duty to deal fairly and act in good faith will not lie against a stranger to the contract."); see also Lopez v. Farmers Ins. Co., Inc., 2011 WL 1807158, at *4 (W.D. Okla. May 6, 2011) (holding that an insurance exchange did not breach a contract to which it was not a party). The Court can find no language in the Policy suggesting that CSAA Insurance Exchange is a party to the Policy. Further, the references to the Agreement (between AAA Insurance and CSAA Insurance Exchange) in the state court petition and supporting exhibits show only that AAA Insurance is a member of the exchange, not plaintiff. See Dkt. ## 2-2, at 2; 2-9; 13-5; 13-7. Therefore, CSAA Insurance Exchange cannot be liable for breach of contract or breach of the duty of good faith and fair dealing under plaintiff's Policy.

Exhibit 1, at 4-5 (footnotes omitted).

This Court's decision is supported by a litany of state and federal cases.  Plainly, both contract and bad faith claims are based on a breach of contract by the insurer. *See, e.g., Christian*

*v. Am. Home Assur., Co.*, 1977 OK 141, 577 P.2d 899.  Because there is no insurance contract between Plaintiff and the Exchange or Services, Plaintiff likewise has no cognizable claim for bad faith against the Exchange or Services.  Further, the essence of a breach of the implied duty of good faith and fair dealing claim is "the insurer's unreasonable, bad faith conduct...."  *Newport v. USAA*, 2000 OK 59, ¶ 9, 11 P.3d 190, 195 (emphasis added).  The proper parties to a bad faith case are the insurance company that issued the subject policy (the "insurer") and the insured.  *See, e.g., Timmons v. Royal Globe Ins. Co.*, 1982 OK 97, ¶ 13, 653 P.2d 907, 911 ("There is but one duty to deal fairly and in good faith, which is owed by the insurer...." (emphasis added)).  Additionally, an insurer's duty of good faith and fair dealing is non-delegable. *See, e.g., Warthor v. Mut. Assur. Adm'rs, Inc.*, 2004 OK 2, ¶ 6, 87 P.3d 559, 561-62 ("The special relationship creates a nondelegable duty of good faith and fair dealing on the part of the insurer."); *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 2000 OK 55, n.5, 11 P.3d 162 (holding that insurer's duty to its insured is nondelegable).

In the case of *Timmons*, 1982 OK at 97, 653 P.2d at 907, the Oklahoma Supreme Court recognized that "non-insurer defendants" are not subject to the implied duty of good faith and fair dealing. *Id.* at 912, quoting *Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032 (Cal 1973). Similarly, in *St. Paul Reinsurance Co. v. Club Services Corp.*, 30 Fed. App'x 834 (10th Cir. 2002) (unpublished), an insurance company sued the insurance agent in an attempt to recover amounts that the insurer paid to settle a bad faith claim brought against it by a purported insured. In dispensing of the case, the Tenth Circuit Court of Appeals stated:

> The district court relied primarily on two cases establishing that, in Oklahoma, agents like Mr. Martin and Club Services cannot be liable for breach of the covenant of fair dealing. *See Hayes v. Jackson National Life Ins. Co.*, 105 F.3d 583, 590 (10th Cir. 1997) ("under Oklahoma law, the alleged knowledge and acts of the agent at the time of the application [are] not imputed to the principle for purposes of determining whether the principal acted in bad faith"); *Timmons v. Royal Globe*

3

> *Ins. Co.*, 653 P.2d 907, 912 (Okla. 1982) (holding that an agent, as a stranger to an insurance contract, cannot be held to breach an implied covenant of fair dealing). We agree with the district court that Mr. Martin and Club Services cannot be held liable for any bad faith attributable to St. Paul in dealing with Ms. Wilson.

*Id.* at 836 (emphasis added).  Based upon this authority, any attempt to assert claims for breach of contract or bad faith against CSAA Fire or Services is patently misplaced. Accordingly, Plaintiff has not and cannot state a valid claim against the Exchange or Services. *See United Adjustment Services, Inc. v. Professional Insurors Agency, LLC*, 2013 OK CIV APP 67, 307 P.3d 400, 405 ("Oklahoma law clearly provides that an insured cannot bring a bad faith claim against an insurance agency or its agent because they are not parties to the insurance contract.").

Just as in *DeSmet,* Plaintiff alleges claims for breach of contract and breach of the duty of good faith and fair dealing.  Amended Petition, [Dkt. No. 2-2], at 4-12.  Similarly, Plaintiff admits she "entered into a contract of insurance with CSAA Fire," *id.,* at ¶ 27, not the Exchange.  There is no language in the policy suggesting that the Exchange is a party to the policy.  *See* Exhibit 3. As discussed in more detail below, CSAA Fire is subsidiary of the Exchange, and Plaintiff has a legal relationship only with CSAA Fire, not the Exchange.  Consequently, the Exchange cannot be liable for breach of the duty of good faith and fair dealing under Plaintiff's Policy.  *See DeSmet,* at 5, fn. 1 ("Oklahoma courts have held that insurance exchanges are not parties to an insurance contract when the language of the contract shows otherwise."), citing *Cloud v. Illinois Ins. Exchange,* 701 F.Supp. 197, 200-01 (W.D. Okla. Dec. 2, 1988).[2]

---

[2] In addition to denying the Motion to Remand, this Court dismissed CSAA Exchange from the litigation.  Such a result would be appropriate here, for both the ***Exchange and Services***, even without a motion to dismiss pending.  *Andrews v. Heaton*, 483 F.3d 1070, 1074 (10th Cir. 2007), citing *McKinney v. State of Okla., Dept. of Human Servs., Shawnee, OK,* 925 F.2d 363, 365 (10th Cir.1991) (citing *Baker v. Dir., U.S. Parole Comm'n,* 916 F.2d 725, 727 (D.C.Cir.1990); *Huxall v. First State Bank,* 842 F.2d 249, 250 n. 2 (10th Cir.1988)).

II.     **Plaintiff's Unavailing Reliance on *McDonald*.**

Plaintiff substantially discusses the *McDonald* case, arguing, contrary to the proof offered in the Notice of Removal and attached hereto, that "the Exchange has not provided any additional evidence to refute [the *McDonald*] ruling."  As quoted by Plaintiff, *McDonald,* 2017 WL 887108 at *2, provided:

> The pertinent question from the Court's perspective…is not whether CSAA Insurance Exchange can write policies in Oklahoma but rather whether any subscriber is a citizen of Oklahoma. The fact that a policy may be written in California does not foreclose that one or more subscribers is a citizen of Oklahoma for purpose[s] of diversity jurisdiction. This is especially true given that there may be partnerships or limited liability corporations with partners or members who are Oklahoma residents but who have a basis for obtaining insurance in California and have obtained subscription to CSAA Insurance Exchange.

Based on the court's critique in *McDonald,* Defendants submitted an affidavit to establish that there are, in fact, no Exchange subscribers in Oklahoma.  *See* [Dkt. No. 2-11], ¶ 3 and Exhibit 2, ¶¶ 3-4.

Plaintiff, rather than conducting discovery,[3] simply argues, without support, that the affidavit is conclusory.  However, Plaintiff does not define what conclusory is.  Under Plaintiff's approach no affidavit would ever be sufficient.  One could state that the thief wore a red coat – but this would be "conclusory" because Plaintiff did not establish the quality of her eye sight, the existing weather conditions, the position of the sun, or the scientific means by which the retina receives the image that is translated into electronic impulses that travel the optic nerve to the brain and trigger a mental response associated with the color red.  Rather than making a conclusory

---

[3] In *McDonald,* the plaintiffs chose to lay behind the log and wait for Defendants to complete their briefing before seeking discovery.  Given Plaintiff's intimate knowledge of these issues after counsel's involvement in *McDonald,* Plaintiff was fully aware of any potential need for discovery prior to filing the Notice of Removal.  Plaintiff should not be permitted to conduct discovery in this case after the briefing is completed.  There is simply no justification for such a belated request here.

statement – typically purported facts making a legal conclusion, *i.e.*, "I suffered harm as a result of another's negligence," or "she violated a statutory limitation," – Ms. Evans makes a pure factual statement.  She simply states there are no Exchange subscribers in Oklahoma.  Plaintiff briefly contends that Ms. Evans' affidavit should be ignored because "Defendants' own documents contradict her sworn testimony."  Motion at 11-12.  However, as shown below, the documents submitted by Plaintiff server only to endorse, rather than discredit, Ms. Evans' affidavit.

Nonetheless, to further ally Plaintiff's concerns, Defendants have obtained an additional affidavit from Jared Peterson, which establishes that a current search of "the Insurance Agency Management software database further confirmed that there are no CSAA Insurance Exchange customers, subscribers or members in Oklahoma."  Exhibit 2, ¶¶ 3-4.

In light of such undisputed evidence, Defendants have answered the controlling question in *McDonald* – there are no Exchange subscribers in Oklahoma, and thus there is complete diversity.

**III.     Plaintiff's Efforts to Destroy Corporate Distinctions are Unsupported by Fact or Law.**

Ignoring this Court's decision in *DeSmet* (which in Plaintiff's defense had not been issued at the time of her Motion) and the guidance provided by *McDonald* (which had)*,* Plaintiff argues, without any legal authority, that corporate distinctions should be disregarded and Oklahoma citizenship conferred on the Exchange.  This contention is predicated on Plaintiff's illogical assemblage and improper reading of selected portions of various documents.  Before addressing Plaintiff's exhibits, which not only defeat Plaintiff's argument but also buttress the affidavits submitted herewith, it is beneficial to conduct a brief overview of the corporate structure of the Exchange and its affiliated entities.

### A.    The Corporate Structure of the Exchange and its Affiliates.

The Exchange has two roles that are pertinent to this discussion.  It is both a reciprocal exchange and a holding company.  While Plaintiff attempts to ignore these two roles, it is clear that the subsidiary companies are wholly distinct entities, with their own methods of operating and reporting requirements.

Reciprocal exchanges have very different structures than the more typical stock insurance company.[4]  This is reflected in governing statutes in both California and Oklahoma.  *See e.g.,* Cal. Ins. Code § 1280 *et seq.*; 36 O.S. § 2901 *et seq.*  Under Oklahoma law, "reciprocal insurance" is insurance "resulting from an inter-exchange among persons, known as 'subscribers,' of reciprocal agreement of indemnity, the inter-exchange being effectuated through an 'attorney-in-fact' common to all such persons." 36 O.S. § 2901.  A "reciprocal insurer" is "an unincorporated aggregation of subscribers operating individually and collectively through an attorney-in-fact to provide reciprocal insurance among themselves." 36 O.S. § 2902. However, before a reciprocal insurer may transact insurance in Oklahoma, it must obtain a certificate of authority from the Insurance Commissioner. *See* 36 O.S. § 2909.

The Exchange is undisputedly a reciprocal exchange, as defined by both California and Oklahoma law.[5]  As such, the Exchange, like other insuring entities, has reporting obligations, including quarterly statements.  Each quarter, the Exchange and insurance entities across the country must complete standardized quarterly forms created by the National Association of

---

[4] In *McDonald*, a case acknowledged but distinguished in *DeSmet,* the history and current posture of reciprocal exchanges was discussed at length.  Rather than repeating that discussion here, a copy of the applicable brief is attached hereto for the Court's convenience as Exhibit 4.

[5] Significantly more discussion regarding the nature of the Exchange is found below when Defendants examine the Rules and Regulations of the Board of Insurers attached by Plaintiff as an exhibit to her Motion.

Insurance Commissioners.   A review of the Exchange's most recent submission is highly informative.[6]  For instance, the form provides blanks for both "NAIC Group Code" and "NAIC Company Code."  A "group code" is "a unique three to five digit number assigned by the NAIC to identify those companies that are part of a larger group of insurance companies."[7]  A "company code" is "a five-digit identifying number assigned by NAIC, assigned to all insurance companies filing financial data with NAIC."[8]  Thus, the NAIC recognizes that states want affiliated insurance companies to be assigned a "group code" and that occurrence is common enough that a group code system has not only be created but it is a required inclusion on the form.  Similarly, the fact that the form also requires an individual "company code" establishes that there are recognized legal distinctions between members of a "group."

Similarly, the form requires the reporting entity to state if it is a member of an "insurance holding company system."  Exhibit 5, at 2.[9]  Again, this reflects an understanding that states permit such systems, and that these systems are common enough to have not only a question, but a specialized section within the form to address such issues.  The specific schedule within the Exchange quarterly report – "Detail of Insurance Holding Company System" – lists the Exchange and the other insurance entities in the same holding company system, including CSAA Fire and CSAA General.  *Id.*, at 3.  It reflects that both CSAA Fire and CSAA General are "direct subsidiaries" or "DS," 100% owned by the Exchange.[10]  *Id.*  The Exchange, CSAA Fire and CSAA

---

[6] While a portion of the Exchange's most recent quarterly report was included in the Notice of Removal [Dkt. No. 2-8], additional relevant portions are attached here as Exhibit 5.

[7] NAIC, Glossary of Insurance Terms, https://content.naic.org/consumer_glossary.htm.

[8] *Id.*

[9] 36 O.S. § 1631(5) defines "Insurance holding company system" as "consisting of two or more affiliated persons, one or more of which is an insurer."  *See also* Cal. Ins. Code § 1215 *et seq*.

[10] Notes on completing the form, including abbreviations, are available online.  *See* http://www.naic.org/documents/2013-05BWG.doc.  Defendants further note that while the form

General have "domicilary locations" other than Oklahoma.  *Id.*  It further shows that both CSAA Fire and CSAA General have their own federal identification numbers and NAIC company codes.  *Id.* These subsidiaries are thus distinct corporate entities that must also separately file their own quarterly reports (among other such obligations).  *See, e.g.,* CSAA Fire Quarterly Report [Dkt. No. 2-4]; CSAA General Quarterly Report Excerpt, attached as Exhibit 6.  Similarly, the organizational structure chart included in the Exchange Quarterly Report reflects the Exchange as both an insurance entity (based on the company code) and the holding company, with its various subsidiaries (and their unique company codes) listed below.  *Id.*

The quarterly report acknowledges that there are corporate relationships between the Exchange and its subsidiaries.  But it also ensures there is no doubt that these are distinct corporate entities.  They have different methods of operation and, in particular, insuring their customers, as the Exchange is a reciprocal exchange and CSAA Fire and CSAA General are stock insurance companies.  The various companies maintain their own financial books and their own customers.  There is no suggestion that the insured of one is somehow an insured (or subscriber) of the other.  1

**B.      *Plaintiff's "Evidence" does not Indicate that She is a Member of the Exchange or Conflict with the Affidavits Presented by Defendants.***

Plaintiff attaches several exhibits which she contends somehow support her contention that she is a subscriber of the Exchange and that trump the affidavits submitted by Defendants.  However, an examination of those materials further confirm the separate and distinct nature of the various entities and plainly support the facts set forth in the affidavits.  Despite admitting that Plaintiff's contract is with CSAA Fire, Plaintiff is apparently attempting to disregard corporate distinctions by pulling bits and pieces from a variety of unrelated and often outdated sources to

---

uses the term "controlled," it is defined to include "ownership," rather than the type of "control" Plaintiff would seek to argue in an effort to "pierce the corporate veil."

contend that every auto club member and every insured of any subsidiary or affiliate of a AAA entity is a "subscriber" of the Exchange for diversity purposes.  This contention simply has no merit.

### 1.    Excerpt from McDonalds' Claim File

Plaintiff submits one page ("Page 24") of an apparently lengthy report regarding the McDonalds' claim history, which was produced as part of the McDonalds' claim file.  Motion, Ex. 3 [Dkt. No. 17-3].  Plaintiff does nothing to establish the nature of the report, who generated the report (it appears to be a third party), or any other pertinent information.  In a column labeled "insurer," it states "CSAA Insurance Exchange (CSAA Insurance Group)."  "CSAA Insurance Group" is not a legal entity, but rather a term used to reference a group of insurance company, including CSAA Fire.  As discussed above, regulators have provided "group codes" assigned to multiple insurers, including the parent company – the Exchange – and subsidiaries like CSAA Fire and CSAA General.  As a result, the document cannot be read to state Plaintiff is insured by the Exchange, particularly given the admission by Plaintiff and declaration page establishing the insurer is CSAA Fire.  Additionally, the exhibit relates exclusively to the McDonalds' claim from 2015, and Plaintiff has done nothing to establish its relevance here.  Thus, the exhibit does not and cannot contradict Ms. Evans' affidavit related to the instant case and executed in 2019.

### 2.    Interview of Former California State Automobile Association CEO

Plaintiff attaches a 2006 interview with a former CEO of the California State Automobile Association.  [Dkt. No. 17-4].  That entity no longer exists.  *See* Secretary of State Business Entity Search, attached as Exhibit 7.  At best, Plaintiff's highlighted portions of the interview (and immediately surrounding texts) show that, thirteen years ago, the reciprocal exchange and the

nonprofit motor clubs were separate entities.  *Id.,* at 4, 8.  Thus, to the extent this exhibit to the

extent it has any relevance, supports Ms. Evans' affidavit.

3. *The CSAA Insurance Group Website*

Plaintiff attaches "overview" and "contact" webpages, a "terms and conditions" page and

a "summary of changes" page [Dkt. Nos. 17-5, 17-6, 17-7 and 17-8] again for the limited purpose

of suggesting that corporate distinctions should be ignored and thus any insured is a member of

the Exchange.  In particular, Plaintiff seeks to use the name "CSAA Insurance Group" to merge

all affiliated entities into a single corporate persona.  However, as explained by Ms. Evans:

> CSAA Insurance Group is not a legal entity nor does it hold itself out to be one.  It
> does not underwrite or administer policies or otherwise act as a legal entity.  "CSAA
> Insurance Group" is simply a term used to reference a group of insurance
> companies that includes CSAA Insurance Exchange, FCIC, and CSAA General
> Insurance Company.  CSAA Insurance Group does not include AAA Club Alliance
> or AAA Oklahoma.

[Dkt. No. 2-10], ¶ 10.  The exhibits explicitly support Ms. Evans' affidavit.  For example, Plaintiff

highlights the statement: "CSAA Insurance Group consists of CSAA Insurance Exchange…CSAA

Fire & Casualty Insurance Company, CSAA General Insurance Company" and others.  [Dkt. No.

17-5].  Similarly, the terms of use are between the user and the specific and distinct legal entities

– *i.e.*, "CSAA Insurance Exchange; CSAA General Insurance Company; CSAA Fire & Casualty

Insurance Company" and others.  [Dkt. No. 17-8], at 1.  It then collectively refers to these entities

as CSAA Insurance Group.  *Id.*  Again, as highlighted by Plaintiff, the exhibit lists the

"underwriting companies," which separately include the Exchange, CSAA Fire and CSAA

General Insurance Company.  *Id.* at 5-6.  In sum, these exhibits serve only to reinforce Ms. Evans'

affidavit – that CSAA Insurance Group is a collective term used to describe the various

underwriting companies.  This in no way supports Plaintiff's contention that an insured under a

CSAA Fire policy is a subscriber in the Exchange – in fact, it does the exact opposite, confirming

the separate corporate entities as distinct underwriting companies.  Additionally, the website terms confirm that insureds may or may not be AAA motor club members, reflecting different modes of access to "MyPolicy" for AAA club members and those that are not.  Motion, Ex.t 8 [Dkt. No. 17-8], at 2.

4.      *Rules and Regulations of the Insurance Board of CSAA Insurance Exchange*

Plaintiff also attaches both outdated versions of Rules of the Insurance Board of CSAA Insurance Exchange ("Rules and Regulations"), as well as a current version. Compare [Dkt. Nos. 17-9 and 17-12].[11]   Plaintiff quotes to a section of the Rules and Regulations to contend that because she is a AAA member, she must be an Exchange subscriber.  Motion, at 11. This claim simply does not stand up to any meaningful scrutiny.

As the Rules and Regulations make clear (and consistent with the statutory authorities discussed above) the Exchange conducts an inter-insurance exchange "through which the subscribers exchange insurance…in accordance with...the Insurance Code of the State of California…."  Rules and Regulations [Dkt. No. 17-9], at 1; *see also* [Dkt. No. 17-12], at 1. Plainly, the Exchange only issues policies in the State of California.  Nothing in the Rules and Regulations suggests that the "purpose and business of the Exchange" is the "conducting of an inter-insurance exchange in accordance with . . . the Insurance Code of the [State of Oklahoma.]"

Accordingly, a simple NAIC search reveals the Exchange is not licensed as a reciprocal insurer in the State of Oklahoma. *See* NAIC Company Search Look-Up for 1 "CSAA Insurance

---

[11] As Plaintiff relies mover heavily on the historic version of the Rules and Regulations, Defendants have focused their response on that exhibit.  However, the provisions at issue here are substantially similar in both documents.

Exchange" [Dkt. No. 2-10]. Since the Exchange is not licensed as a reciprocal insurer in the State of Oklahoma, it does not issue insurance policies in the State of Oklahoma.[12]

Moreover, if Plaintiff had obtained "Exchange Insurance," as she has alleged, Plaintiffs would have been required to sign a power of attorney. *See* Rules and Regulations, [Dkt. No. 17-9], at 3; *see also* [Dkt. No. 17-12], at 3. Notably, Plaintiffs did not submit a signed power of attorney or subscriber's agreement supporting their claim that they obtained "Exchange Insurance." *See* Motion, at 5. This is because none exist. Furthermore, Plaintiff admits her policy was issued by CSAA Fire. [Dkt. No. 2-2], at 27. The policy is not a "subscriber's agreement," does not purport to offer reciprocal insurance and does not name Services, or any other entity, as Plaintiffs' attorney-in-fact. In short, Plaintiffs' suggestion that they, or any other CSAA policyholder, have obtained "Exchange insurance" is without merit and should be promptly disregarded.

Plaintiff is a member of a AAA club. [Dkt. No. 17], at 10. However, there is no requirement that an individual must be the member of a club to obtain insurance from CSAA Fire. Peterson Affidavit of 08/12/19, ¶ 9, appended to Exhibit 2; *see also* Motion, Ex. 8 [Dkt. No. 17-8], at 2 (Plaintiff's exhibit reflecting different modes of access to "MyPolicy" for AAA club members and those that are not). Indeed, the fact that the Exchange has certain AAA club requirements only further proves that subscribers of the Exchange must meet different criteria than those obtaining insurance from CSAA Fire or another stock insurance entity.

---

[12] The only way the Exchange could have a subscriber in Oklahoma is if that individual purchased insurance through the Exchange in California to insure property in California but nonetheless maintained his or her citizenship in Oklahoma. This is an unlikely scenario, but the one the *McDonald* Court seized upon to remand the case. Here, Defendants have offered evidence that such a scenario does not exist. Plaintiff has offered nothing to the contrary. Therefore, the Exchange cannot be considered a citizen of the State of Oklahoma.

Perhaps the greatest fallacy in Plaintiff's argument is that it assumes that all AAA club members are subscribers of the Exchange or at least have insurance with an affiliate. Plaintiff offers no evidence to support this belief – there is none. As discussed below, there are many AAA club members that simply do not obtain insurance from any CSAA entity or affiliate.

5.    *CSAA General Insurance Company Auto Policy and Renewal Letter*

While Plaintiff has home insurance through CSAA Fire, she has auto insurance through CSAA General. [Dkt. No. 17-10], at 1-5 (each page stating that the underwriting company is CSAA General Insurance Company); *see also, id.,* at 5 ("'We,' 'us,' and 'our' refer to your insurance carrier which is named at the top of this page."). In short, just as this Court recognized in *DeSmet* that CSAA Fire is distinct from the Exchange and thus there is no relationship between Plaintiff and the Exchange, CSAA General is distinct from the Exchange and there is no relationship between Plaintiff and the Exchange in light of her auto coverage. *See* Evans Affidavit of 08/22/19, ¶ 9, attached as Exhibit 8.

Moreover, as noted by Plaintiff, her auto policy renewal provides "[a]n automatic discount if any rated driver has an active AAA membership." [Dkt. No. 17-10], at 4. The auto declaration page notes that Plaintiff receives a "membership discount." *Id.,* at 3. If, as Plaintiff argues at different points that either (1) every AAA member is an Exchange subscriber or (2) every insured must be a AAA member, there would be no "discount," as the price would be the same for all.

6.    *AAA Oklahoma Membership Handbook*

Finally, Plaintiff attaches the AAA Oklahoma Membership Handbook. [Dkt. No. 17-11]. Plaintiff argues that the Handbook provides "AAA services are for Members only" and "these services include automobile and homeowner's insurance." Motion, at 11, citing Handbook, at 5

& 18.  In doing so, Plaintiff conveniently ignores the plain reading of the Handbook.  For instance,

the introduction to the Handbook provides:

> Your membership gives you emergency roadside assistance that covers you
> wherever you are, whatever care you're in…***along with many significant discounts
> on*** everything from lodging, travel and entertainment, retail, dining, to ***home and
> auto insurance policies.***"  Handbook, at 4 (emphasis added).

To reiterate, the auto club membership provides roadside assistance *and discounts*, which include

discounts on insurance.  This simply cannot be read to require auto club members to have insurance

or for those obtaining insurance to be auto club members.  This understanding is further confirmed

by reviewing the "Insurance" section [Dkt. No. 17-11] at 18, cited by Plaintiff.  Rather than

supporting Plaintiff's contentions, this section plainly reveals that the exclusive benefit is the

discount, not the insurance itself.  *Id.* ("Insure your car and home through AAA Insurance and

receive up to a 30 percent discount on your home policy." "Special discounted rates have been

designed exclusively for AAA Members." "An additional discount is available when you insure

your automobiles and owner-occupied home with AAA Insurance.").

In light of Plaintiff's general attempt efforts to disregard corporate formalities, including

these efforts to implicate the non-defendant auto club, a brief discussion of the auto club is

appropriate.  The Affidavit of Jared Peterson, Regional President of AAA Club Alliance Inc., ¶¶ 4,

6-8 (appended to Exhibit 2) confirms that the other Defendants do not have any ownership interest

in or control over AAA Oklahoma and that AAA Oklahoma is not related to the Exchange.  AAA

Oklahoma and CSAA do business through a contractual relationship whereby AAA Oklahoma

procures and submits applications for insurance to CSAA. *Id.,* ¶ 9.  AAA Oklahoma does not issue

or underwrite insurance. *Id.,* ¶ 10.  AAA Oklahoma does not handle, investigate or evaluate claims.

*Id.,* ¶ 11.  AAA Oklahoma offers CSAA insurance to its members at a discounted rate and to non-

members, *i.e.* the general public, at a non-discounted rate. *Id.*  In short, the Exchange has no

15

ownership or control over AAA Oklahoma. AAA Oklahoma merely markets CSAA's insurance products to its members and the general public. *Id.,* ¶ 9.  Membership in AAA Oklahoma, or any other American Automobile Club, is not a requirement for CSAA insurance.  Peterson Affidavit appended to Exhibit 2, ¶ 9.  CSAA Fire offers homeowners' insurance to the general public, and CSAA General offers auto insurance to the general public.  As a courtesy, these insurers offer AAA Oklahoma members, including Plaintiff, a discount. *Id.; see also* Plaintiff's Home and Auto Declaration Pages [Dkt. No. 2-5 and 17-10] (identifying discounts).[13]   If AAA Oklahoma membership was mandatory, CSAA's decision to offer AAA Oklahoma members a discount would make no sense.

Even if Plaintiff was required to be a member of AAA Oklahoma, Plaintiff presents no authority demonstrating this somehow makes Plaintiff a subscriber of the Exchange.  Again, *DeSmet* is informative, as this Court rejected the plaintiff's attempt to apply "affiliated company liability" because the plaintiff made no showing that CSAA General was "unable to meet its obligations under the Policy."  Exhibit 1, at 5, fn. 2.  Under Oklahoma law, piercing the corporate veil and/or alter ego liability is deemed to be a form of vicarious liability, "imposed by law when one person [entity] is made answerable for the actionable conduct of another." *Braden v. Hendricks*, 1985 OK 14, 695 P.2d 1343, 1352, n. 24. Plaintiff has made no showing that the requisites for such liability exist.  Moreover, such an argument is untimely and contrary to Oklahoma law.  Pursuant to 12 O.S. § 682(B):

> No suit or claim of any nature shall be brought against any officer, director or shareholder for the debt or liability of a corporation of which he or she is an officer, director, or shareholder, until judgment is obtained therefor against the corporation

---

[13] Plaintiff's attempt to graft AAA membership as a condition is tantamount to a request that the Court rewrite the policy. But, "courts are not at liberty to rewrite the terms of an insurance contract." *Spears v. Shelter Mut. Ins. Co.*, 2003 OK 66, 73 P.3d 865, 868.

and execution thereon returned unsatisfied. This provision includes, but is not limited to, claims based on vicarious liability and alter ego.

Thus, before an alter ego claim arises: "First, judgment must be obtained against the corporation, and second, execution on the judgment must be returned unsatisfied." *Racher v. Westlake Nursing Home Ltd. Partnership*, 2014 WL 2003041, *1 (W.D. Okla. 2014); *accord, Bill G. Perry Family Design, Inc. v. Mashburn Faires Homes*, L.L.C., 2015 WL 4042180, at * 1 and 2 (W.D. Okla. 2015) (dismissing plaintiffs' state law claims pursuant to 12 O.S. § 682 "because Oklahoma law does not permit a claim for vicarious liability/alter ego/piercing of the veil of the limited liability corporation unless and until a judgment is entered in plaintiffs' favor against the LLC and plaintiffs are unable to collect on the judgment"); *Kingsbury v. Westlake Management Co.,* CIV-14-468-M, 2015 WL 13189663, *1-2 (W.D. Okla. Dec. 22, 2015); *Boatright Family, LLC v. Reservation Center, Inc.,* CIV-13-192-D, 2015 WL 2345299, *3-4 (W.D. Okla. May 14, 2015). Section 682(B) is applicable and bars Plaintiff's alter ego claims until Plaintiff receives a judgment, and execution on the judgment is returned unsatisfied. 12 O.S. § 682(B).

## CONCLUSION

As Defendants have established, complete diversity exists here, and Plaintiff has produced nothing to controvert this fact. *DeSmet* confirms the Exchange is not a proper party to the litigation as it did not enter into a policy of insurance with Plaintiff. Even ignoring such a determination, Defendants have proven that no Exchange subscriber is a citizen of Oklahoma for diversity purposes. Plaintiff's efforts to ignore corporate distinctions and make Plaintiff a subscriber of the Exchange are wholly unsupported by law or fact. Plainly, Defendants have established federal diversity jurisdiction exists and Plaintiff's Motion should be denied.

Respectfully Submitted,

*s/Matthew C. Kane*
**GERARD F. PIGNATO (OBA NO. 11473)**
**MATTHEW C. KANE (OBA NO. 19502)**

Of the Firm:
**RYAN WHALEY COLDIRON JANTZEN**
**PETERS & WEBBER PLLC**
400 North Walnut Avenue
Oklahoma City, Oklahoma  73104
Telephone:  (405) 239-6040
Facsimile:  (405) 239-6766
jerry@ryanwhaley.com
mkane@ryanwhaley.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2019, I transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registrants:

Reggie N. Whitten
Michael Burrage
J. Revell Parrish
Brian A. Dittrich

*s/Matthew C. Kane*
For the Firm

18