# EXHIBIT 4

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GARY McDONALD and, <br> SHARON McDONALD <br><br> Plaintiffs, <br><br> v. <br><br> CSAA INSURANCE EXCHANGE, <br> CSAA FIRE AND CASUALTY <br> INSURANCE COMPANY d/b/a <br> AAA FIRE AND CASUALTY <br> INSURANCE COMPANY, AND <br> AUTOMOBILE CLUB OF OKLAHOMA <br> d/b/a AAA OKLAHOMA <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No.: 5:16-cv-00336-R |

---

**DEFENDANTS' RESPONSE AND
OBJECTION TO PLAINTIFFS' MOTION TO REMAND**

---

Respectfully submitted,

Gerard F. Pignato, OBA No. 11473
Erin J. Rooney, OBA No. 31207
PIGNATO, COOPER, KOLKER &
 ROBERSON, P.C.
Robinson Renaissance Building
119 North Robinson Avenue, 11th Floor
Oklahoma City, Oklahoma 73102
Telephone:   (405) 606-3333
Facsimile:   (405) 606-3334
Email: jerry@pclaw.org; erin@pclaw.org
**ATTORNEYS FOR CSAA INSURANCE
EXCHANGE AND CSAA FIRE AND
CASUALTY INSURANCE COMPANY
d/b/a AAA FIRE AND CASUALTY
INSURANCE COMPANY**

Dated: June 3, 2016

## TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

BRIEF IN SUPPORT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD FOR FRAUDULENT JOINDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

PROPOSITION I:     THE EXCHANGE IS NOT A CITIZEN OF
                    OKLAHOMA AND PLAINTIFFS HAVE
                    NOT OBTAINED "EXCHANGE
                    INSURANCE.". . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PROPOSITION II:    PLAINTIFFS CANNOT MAINTAIN A
                    VIABLE CLAIM AGAINST AAA
                    OKLAHOMA.. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

A.     An Oklahoma resident is not required to become a member of AAA
       Oklahoma before obtaining insurance through CSAA.. . . . . . . . . . . . . . 12

B.     AAA Oklahoma cannot be held vicariously liable for CSAA's alleged
       wrongful conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       1.     Plaintiffs do not allege that AAA Oklahoma issued the subject
              insurance policy... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       2.     AAA Oklahoma is not a subsidiary of the Exchange and is a
              stranger to the insurance contract at issue. . . . . . . . . . . . . . . . . . 17

       3.     Plaintiffs cannot state a valid claim based upon the doctrine
              of "piercing the corporate veil.". . . . . . . . . . . . . . . . . . . . . . . . . 21

C.     The answers filed by AAA Oklahoma in other breach of contract,
       bad faith lawsuits are irrelevant to this lawsuit. . . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

## TABLE OF AUTHORITIES

### Cases

*Braden v. Hendricks*
  695 P.2d 1343 (Okla. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*California State Auto Ass'n Inter-Insurance Bureau v. Downey*
  216 P. 882 (Cal. Ct. App. 1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cardenas v. Ori, et. al.*
  CIV-14-386-R, 2015 WL 2213510 (W.D. Okla. May 11, 2015). . . . . . . . . . . . . 11

*Dellos v. Farmers Ins. Grp., Inc.*
  155 Cal. Rpt. 843 (Cal. Ct. App. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Dodd v. Fawcett Publications, Inc.*
  329 F.2d 82 (10th Cir. 1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3,16,24

*Fraizer v. Bryan Memorial Hosp. Authority*
  775 P.2d 281 (Okla. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Gens v. Casady School*
  177 P.3d 565 (Okla. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gruenberg v. Aetna Ins. Co.*
  510 P.2d 1032 (Cal. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kansas State University v. Prince*
  673 F. Supp. 2d. 1287 (D. Kan. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Lee v. Interinsurance Exchange*
  57 Cal. Rpt. 798 (Cal. Ct. App. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . 3,4,5,6

*Mayes v. Rapoport*
  198 F.3d 457 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Nadeau v. Merlin*
  110 N.W.2d 29 (Min. 1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ii

*Powers v. Dist. Court of Tulsa Cnty.*
    227 P.3d 1061 (Okla. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Spears v. Shelter Mut. Ins. Co.*
    73 P.3d 865 (Okla. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16

*St. Paul Reinsurance Co. v. Club Services Corp.*
    2002 WL 202243 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Timmons v. Royal Globe Ins. Co.*
    653 P.2d 907 (Okla. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United Adjustment Services, Inc. v. Professional Insurors Agency, LLC,*
    307 P.3d 400 (Okla. Ct. App. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Updike v. West*
    172 F.2d 663 (10th Cir. 1949), *cert. denied,*
    337 U.S. 908 (1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Wilson v. Republic Iron & Steel Co.*
    257 U.S. 92 (1921). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## **Statutes**

12 O.S. § 682(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

36 O.S. § 2901. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

36 O.S. § 2902. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

36 O.S. § 2909. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

36 O.S. § 2921. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

36 O.S. § 2922. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Other Authorities**

*2 Couch on Insurance 2d* (Rev. ev. 1984) § 18.11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Reinmuth, *The Regulation of Reciprocal Insurance Exchanges*
    (1967) ch. I, "The Development and Classification of
    Reciprocal Exchanges". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Prosser, Torts (2d ed.) c. 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Laski, The Basis of Vicarious Liability, 26 Yale L.J. 105. . . . . . . . . . . . . . . . . . . . . . . 17

## DEFENDANTS' RESPONSE AND
## OBJECTION TO PLAINTIFFS' MOTION TO REMAND

Defendants, CSAA Insurance Exchange (the "Exchange") and CSAA Fire & Casualty

Insurance Company d/b/a AAA Fire & Casualty Insurance Company ("CSAA") (hereinafter

collectively referred to as the "CSAA Defendants"), for their response and objection to

Plaintiffs' Motion to Remand [Dkt. No. 9] ("Plaintiffs' Motion"), state as follows.

### INTRODUCTION

Almost a hundred years ago, the United States Supreme Court made it clear that a

defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident

defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel

Co.*, 257 U.S. 92, 97 (1921). Here, Plaintiffs seek to rob the CSAA Defendants of their right

of removal with half truths, unsupported speculations and misrepresentations of the record.

For example, Plaintiffs argue that "Defendants do not dispute, the companies are setup in

such an elaborate fashion for one purpose – to make money for the Exchange", (Plaintiffs'

Motion [Dkt. No. 9], p. 10), and that "it is undisputed that AAA Oklahoma is an integral part

of Defendants' ability to issue insurance policies inasmuch as AAA membership is a

mandatory requirement for issuance of any automobile or homeowners' insurance policy."

(Plaintiffs' Motion [Dkt. No. 9], p. 10.)

These can hardly be described as "undisputed" facts. Indeed, the CSAA Defendants'

removal is based entirely on the proposition that they have no ownership interest in AAA

Oklahoma and that a AAA Oklahoma membership is not necessary to obtain insurance from

CSAA. Plaintiffs' arguments demonstrate just how far they are willing to go to avoid this

1

Court's jurisdiction. As shown below, the facts are: (1) the Exchange is not a citizen of the State of Oklahoma; (2) Plaintiffs have not "obtained Exchange insurance"; (3) Defendant AAA Oklahoma is not owned by the Exchange or its subsidiaries; and (4) Plaintiffs did not have to obtain a AAA Oklahoma membership to purchase insurance from CSAA. Accordingly, the Court should swiftly deny Plaintiffs' request for remand.

### STANDARD FOR FRAUDULENT JOINDER

"[T]he court does not consider the citizenship of fraudulently joined defendants in determining the existence of jurisdiction." *Kansas State University v. Prince*, 673 F. Supp. 2d. 1287, 1294 (D. Kan. 2009) (*citing Updike v. West*, 172 F.2d 663, 665–666 (10th Cir. 1949), *cert. denied*, 337 U.S. 908 (1949)). The doctrine of fraudulent joinder "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.* (*citing Mayes v. Rapoport,* 198 F.3d 457, 461 - 62 (4th Cir. 1999)).

To determine whether a party is fraudulently joined, the Tenth Circuit has directed courts to "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.*" Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted). "The court's examination of affidavits or other matters of record is thus appropriate." *Id.* The Tenth Circuit has established two bases for finding fraudulent joinder: (1) "[t]he joinder of a resident defendant against whom no cause of action is stated

is a patent sham;" or (2) "though a cause of action be stated, the joinder is similarly

fraudulent if in fact no cause of action exists." *Id.*

**ARGUMENTS AND AUTHORITIES**

> **PROPOSITION I: THE EXCHANGE IS NOT A CITIZEN OF OKLAHOMA AND PLAINTIFFS HAVE NOT OBTAINED "EXCHANGE INSURANCE."**

The CSAA Defendants removed this matter based on Plaintiffs' fraudulent joinder of

AAA Oklahoma. However, in their Motion, Plaintiffs raised an additional argument for

remand. Plaintiffs erroneously argue that if AAA Oklahoma is not a proper party to this

lawsuit, remand is still proper because the Exchange is considered a citizen of the State of

Oklahoma. Along the same line, Plaintiffs speciously assert they obtained "Exchange

Insurance." As these issues were not addressed in the CSAA Defendants' Removal, the

CSAA Defendants will address these arguments first.

However, the CSAA Defendants believe a brief explanation of reciprocal insurance

is necessary to place the issues in context. Inter-insurance exchanges were organizations first

formed in the late 1800's by groups of merchants and manufacturers (individuals,

partnerships, or corporations) that were engaged in similar lines of businesses. These

organizations sought to indemnify each other against certain agreed upon losses through the

exchange of insurance contracts. The exchange was usually made through a common

attorney-in-fact, who was appointed for that purpose by the underwriters, *i.e.* the

"subscribers." *See Lee v. Interinsurance Exchange*, 57 Cal. Rpt. 798, 803 (Cal. Ct. App.

1996). "Under this historical form of insurance contracts, each subscriber became both an

3

insured and an insurer, and had several, not joint, liability on all obligations of the exchange."

*Id.* (citing *Dellos v. Farmers Ins. Grp., Inc.*, 155 Cal. Rpt. 843 (Cal. Ct. App. 1979) and 2

*Couch on Insurance 2d* (Rev. ev. 1984) § 18.11, p. 613). As such, these organizations had

no stock and no capital. The "subscriber's" contingent liability replaced capital stock. *Id.*

Initially, the organizations collected funds for the payments of losses from their

"subscribers" as they occurred. But, as the Court can imagine, this resulted in frequent

delays. *Lee*, 57 Cal Rpt. at 803 (citing Reinmuth, *The Regulation Of Reciprocal Insurance*

*Exchanges* (1967) ch. I, "The Development and Classification of Reciprocal Exchanges",

p. 2). The "subscribers" eventually agreed to pay annual premium deposits, which were

credited to the "subscribers" in separate accounts. Funds were deducted as necessary and,

at the end of the year, any balance in the "subscriber's" account was distributed or was made

available for withdrawal from the exchange. *Id.* Conversely, "if the subscriber's share of

losses and expenses was greater than his deposit, the subscriber could be assessed for a

specified maximum amount beyond the deposit." *Id.*

The formation of CSAA Inter-Insurance Bureau (the Exchange's predecessor) has

been described as follows:

> The California State Automobile Association was organized and
> incorporated in 1907 as a motor club for the purpose of
> advancing the interests of the motoring public. By the year 1914,
> many of its members requested that the Association care for
> their automobile insurance needs. Many members felt that the
> rates charged by the private companies were high and
> unsatisfactory. The Association, in the year mentioned, created
> appellant, the California State Automobile Association
> Inter-Insurance Bureau, in order to offer to its membership a

> plan of automobile insurance at a lower cost than the then
> prevailing rates.

*California State Auto Ass'n Inter-Insurance Bureau v. Downey*, 216 P. 882, 884 (Cal. Ct.

App. 1950)

The reciprocal form of insurance organization as it now exists is difficult to define.

In *Lee*, the California Court of Appeals defined a reciprocal insurer under California law

stating:

> This is what it is: an insurance exchange defined by the
> Insurance Code. As defined by the Code, a California reciprocal
> insurer retains little similarity to the reciprocals of the nineteenth
> century. The defining statutory characteristics of an
> interinsurance exchange which are relevant to the present
> controversy are as follows:
>
> First, section 1303 now provides that reciprocals are no longer
> truly reciprocal enterprises, i.e., it is no longer true that each
> subscriber is both an insurer and an insured. Rather, section
> 1303 provides that a reciprocal insurance company, or
> interinsurance exchange, "shall be deemed the insurer while
> each subscriber shall be deemed an insured."
>
> As in historical times, a present-day interinsurance exchange is
> managed by an attorney-in-fact, who is appointed pursuant to
> powers-of-attorney executed by the exchange's subscribers. (§
> 1305.) The attorney-in-fact may be a corporation (*ibid.*); the
> Code does not require an exchange's attorney-in-fact to be a
> nonprofit corporation. An exchange's power of attorney and
> contracts may provide for the exercise of the subscribers' rights
> by a board. (§ 1307, subd. (d).) The board must be selected
> under rules adopted by the subscribers and is required to
> supervise the exchange's finances and operations to assure
> conformity with the subscriber's agreement and power of
> attorney. (§ 1308.) The board must be composed of subscribers
> or agents of subscribers; not more than one-third of the board
> members may be agents, employees or shareholders of the
> attorney-in-fact. (§ 1310.)

5

In accord with the modern trend toward accumulating unallocated reserves rather than distributing surplus to the subscribers, the directors of a modern California exchange may, but are not required to, return savings or credits to the subscribers. (§ 1420.) However, such distributions are permissible only if there is no impairment of the assets required to be maintained by sections 1370 and following. (*Ibid.*)

In accord with the modern trend away from subscriber liability for a reciprocal's debts, section 1401 provides that, if an exchange maintains surpluses that are sufficiently beyond the legal minimum, it may obtain a certificate from the Insurance Commissioner authorizing the issuance of nonassessable policies. While such a certificate is in effect, subscribers have no contingent liability for claims, expenses or losses of the exchange. Under section 1401.5, an exchange which maintains surpluses of more than three million dollars for five successive years may obtain a certificate of perpetual nonassessability.

If an exchange issues assessable policies, each subscriber is liable, beyond his or her annual premium, for assessments levied by the attorney-in-fact or the Commissioner to satisfy claims against the exchange which exceed the exchange's surplus. (§§ 1391, 1392, 1398.) An exchange's power of attorney may limit the amount of assessments (§ 1397), but each subscriber's contingent liability must be at least equal to one additional premium (§ 1398). The personal liability of subscribers can be asserted by the attorney-in-fact or the Commissioner. (§ 1391.) However, if a debtor of the exchange obtains a judgment against the exchange, and it remains unsatisfied for thirty days, such debtor may proceed directly against the subscribers for any amount for which each subscriber could be assessed by the attorney-in-fact or the Commissioner. (§§ 1450, 1451.) An individual subscriber can avoid liability for assessments, even if the exchange issues assessable policies, if the subscriber, in addition to his or her annual premium, maintains a surplus deposit in an amount equal to the annual premium. (§§ 1399, 1400.)

*Lee*, 57 Cal. Rpt. at 804-05.

Like California, Oklahoma has statues defining reciprocal insurance and reciprocal insurers. Under Oklahoma law, "reciprocal insurance" is insurance "resulting from an inter-exchange among persons, known as 'subscribers,' of reciprocal agreement of indemnity, the inter-exchange being effectuated through an 'attorney-in-fact' common to all such persons." 36 O.S. § 2901. A "reciprocal insurer" is "an unincorporated aggregation of subscribers operating individually and collectively through an attorney-in-fact to provide reciprocal insurance among themselves." 36 O.S. § 2902. However, before a reciprocal insurer may transact insurance in Oklahoma, it must obtain a certificate of authority from the Insurance Commissioner. *See* 36 O.S. § 2909.

Much like California, Oklahoma law establishes a "subscriber's" liability as:

> A. The liability of each subscriber, other than as to a nonassessable policy, for the obligations of the reciprocal insurer shall be an individual, several, and proportionate liability, and not joint.

> B. Except as to a nonassessable policy each subscriber shall have a contingent assessment liability, in the amount provided for in the power of attorney or in the subscribers' agreement, for payment of actual losses and expenses incurred while his policy was in force. Such contingent liability may be at the rate of not less than one nor more than ten times the premium or premium deposit stated in the policy, and the maximum aggregate thereof shall be computed in the manner set forth in section 2925 of this article.

> C. Each assessable policy issued by the insurer shall contain a statement of the contingent liability, set in type of the same prominence as the insuring clause.

36 O.S. § 2921. Also like California, an action may be filed against any subscriber if a final judgment obtained against the insurer remains unsatisfied for thirty (30) days. The

"subscriber's" liability is proportional to his interests, not to exceed his contingent liability.

*See* 36 O.S. § 2922

**A.      *The Exchange is not considered a citizen of the State of Oklahoma.***

The CSAA Defendants do not dispute that the Exchange is a reciprocal insurer formed

under the laws of the <u>State of California.</u>  Similarly, the CSAA Defendants do not dispute

that the Exchange is:

> The organization through which the subscribers exchange contracts of insurance for herein shall be known as CSAA Insurance Exchange, hereinafter called the Exchange.  The purpose and the business of the Exchange shall be the conducting of an inter-insurance exchange **in accordance with the provisions of Division One, Part Two, Chapter Three, of the <u>Insurance Code of the State of California</u> relating to Reciprocal Insurers**, and hereinafter referred to as the Reciprocal or Inter-Insurance Exchange Act.

(*Rules and Regulations of the Insurance Board of CSAA Insurance Exchange, as Amended

August 10, 2015* [Dkt. No. 9-2], ¶ 1 (emphasis added) (quoted in Plaintiffs' Motion, Dkt. No.

9], p.12.)

Plaintiffs fail to recognize that the *Rules and Regulations of the Insurance Board of

CSAA Insurance Exchange, as Amended August 10, 2015* [Dkt. No. 9-2] ("*Rules and

Regulations*") actually belies their argument.  As the *Rules and Regulations* make clear, the

Exchange conducts an inter-insurance exchange "in accordance with . . . the Insurance Code

of the <u>State of California</u> . . . ."  (*Rules and Regulations of the Insurance Board of CSAA

Insurance Exchange, as Amended August 10, 2015* [Dkt. No. 9-2], ¶ 1 (emphasis added).)

Said differently, the Exchange only issues policies in the State of California.  Nothing in the

*Rules and Regulations* suggests that the "purpose and business of the Exchange" is the "conducting of an inter-insurance exchange in accordance with . . . the Insurance Code of the [State of Oklahoma.]"

Not surprisingly, a simple NAIC search reveals the Exchange is not licensed as a reciprocal insurer in the State of Oklahoma.[1]  (*See* NAIC  Company Search Look-Up for "CSAA Insurance Exchange", **Exhibit 1**; Affidavit of Dennis Spadini, **Exhibit 2**.)  Since the Exchange is not licensed as a reciprocal insurer in the State of Oklahoma, it does not issue insurance policies in the State of Oklahoma.  And, because the Exchange does not issue policies in the State of Oklahoma, it does not have any "subscribers" in the State of Oklahoma.  (*See* Affidavit of Dennis Spadini, **Exhibit 2**.)  Therefore, the Exchange is not considered a citizen of the State of Oklahoma.

**B.**     ***Plaintiffs have not obtained insurance through the Exchange.***

In their Motion, Plaintiffs argue that Oklahoma residents must become "member[s] of AAA Oklahoma before obtaining insurance through the Exchange."  In support of this argument, Plaintiffs again rely on the *Rules and Regulations*.  (*See* Plaintiffs' Motion [Dkt.

---

[1]Plaintiffs' reliance on the organizational similarities between Farmers Insurance Exchange is misplaced.  Upon information and belief, the Farmers Insurance Exchange is a reciprocal insurer like the Exchange.  However, unlike the Exchange, Farmers Insurance Exchange is licensed as a reciprocal insurer in the state of Oklahoma.  (*See* NAIC Company Demographics for "Farmers Insurance Exchange", **Exhibit 3**.)  Therefore, unlike the Exchange, Farmers Insurance Exchange may issue insurance contracts in the State of Oklahoma.  Simply put, whether Farmers Insurance Exchange is considered a citizen of the State of Oklahoma is irrelevant to whether the Exchange is considered a citizen of the State of Oklahoma.  Plaintiffs' attempt to compare these two distinct organizations with different goals and policies is nothing more than an attempt to distract the Court from the fact that Plaintiffs utterly failed to provide any evidence supporting their suggestion that the Exchange is a citizen of the State of Oklahoma.

No. 9], p. 6.)  However, there is a fundamental flaw in Plaintiffs' argument.  They have not

obtained "Exchange Insurance."  And, the *Rules and Regulations* do not govern the operation

of CSAA.

As discussed above, the Exchange is not licensed as a reciprocal insurer in the State

of Oklahoma and, therefore, cannot issue insurance policies in the State of Oklahoma.  (*See*

NAIC Company Search Look-Up for "CSAA Insurance Exchange", EXHIBIT 1.)  As alleged

in Plaintiffs' Petition, Plaintiffs purchased homeowners' insurance from CSAA.  (*See*

Petition [Dkt. 1-2], ¶ 7; *see also* Certified Policy and Declaration Pages [Dkt. No. 1-15].)

CSAA is a stock insurer wholly owned by the Exchange.  In other words, its policyholders

own no interest in the company.

Moreover, if Plaintiffs had obtained "Exchange Insurance," Plaintiffs would have

been required to sign a power of attorney.[2]  (*See Rules and Regulations* [Dkt. No. 9-2], ¶

3(b).)  Notably, Plaintiffs did not submit a signed power of attorney or subscriber's

agreement supporting their claim that they obtained "Exchange Insurance."  (*See generally*,

Plaintiffs' Motion to Remand and accompanying exhibits [Dkt. No. 9].)  This is because none

exist.  Furthermore, Plaintiffs do not dispute that the certified policy attached to the CSAA

Defendants' Removal is an accurate copy of the homeowners' policy issued to Plaintiffs or

that the contract governed their relationship with CSAA.  And, that policy is not a

_____

[2]In California, the appointed attorney-in-fact is CSAA Insurance Services, Inc.  (*See Rules and Regulations* [Dkt. No. 9-2], ¶ 3.)  However, the Exchange is not licensed to issue insurance policies in the State of Oklahoma (*See* NAIC  Company Search Look-Up for "CSAA Insurance Exchange", EXHIBIT 1; Affidavit of Dennis Spadini, EXHIBIT 2), and, therefore, does not have an appointed attorney-in-fact in the State of Oklahoma.  (*See* Affidavit of Dennis Spadini, EXHIBIT 2.)

"subscriber's agreement," does not purport to offer reciprocal insurance and does not name

CSAA Insurance Services, Inc., or any other entity, as Plaintiffs' attorney-in-fact.  In short,

Plaintiffs' suggestion that they, or any other CSAA policyholder, have obtained "Exchange

Insurance" is without merit and should be promptly disregarded.

| PROPOSITION II: | PLAINTIFFS CANNOT MAINTAIN A VIABLE CLAIM AGAINST AAA OKLAHOMA. |
|---|---|

In their Motion, Plaintiffs also argue that they can maintain a viable claim against

AAA Oklahoma because they have prayed for judgment against AAA Oklahoma.[3]  Plaintiffs'

oversimplification of Oklahoma's notice pleading standard is unavailing.  It is not enough

to simply pray for judgment against a party.  The petition must "*give fair notice of the*

*plaintiff's claim and the grounds upon which it rests.*"  *Powers v. Dist. Court of Tulsa Cnty.,*

227 P.3d 1061, 1073 (Okla. 2009) (emphasis in original) (citing *Gens v. Casady School*, 177

P.3d 565, 569 (Okla. 2009).  Furthermore, as this Court has explained, "[t]he Court . . . is

permitted to remove those claims that are superfluous in accordance with Oklahoma law . .

. ." *Cardenas v. Ori, et. al*, CIV-14-386-R, 2015 WL 2213510, at *3 (W.D. Okla. May 11,

2015).

---

[3]Apparently grasping at straws, Plaintiffs quote a typographical error in the CSAA Defendants' Removal which states "Plaintiff's Petition does allege the Exchange or the Automobile Club of Oklahoma committed any wrongful acts."  As written, this statement makes little sense.  Clearly, based on the arguments presented in the CSAA Defendants' Removal, the sentence should read, "Plaintiffs' Petition does not allege the Exchange or the Automobile Club of Oklahoma committed any wrongful acts."

**A.**   ***An Oklahoma resident is not required to become a member of AAA Oklahoma before obtaining insurance through CSAA.***

As noted above, Plaintiffs are now claiming they "pled that an individual must become a member of AAA Oklahoma as a prerequisite to obtaining homeowners' insurance through the Exchange." (Plaintiffs' Motion [Dkt. No. 9], p. 6.) Plaintiffs' claim is akin to bait-and-switch sales tactics.

First, Plaintiffs <u>did not</u> plead "that an individual must become a member of AAA Oklahoma as a prerequisite to obtaining homeowners' insurance through the Exchange." Plaintiffs pled that a AAA Oklahoma membership was a prerequisite to obtaining homeowners' insurance from CSAA. Plaintiffs alleged:

> 4.   Automobile Club of Oklahoma d/b/a AAA Oklahoma is a domestic not for profit Oklahoma company. In order for homeowners in Oklahoma to purchase insurance for their homes **through AAA,**[4] each must first become a member of AAA oklahoma, which is a trade name for Automobile Club of Oklahoma. AAA Oklahoma is by definition a local AAA club. That said, Automobile Club of Oklahoma d/b/a AAA Oklahoma may be vicariously liable for the actions or inactions of its corporate affiliates and partners in this case. Automobile Club of Oklahoma may be served with process in Tulsa Oklahoma.

(Petition [Dkt. No. 1-2], ¶ 4 (emphasis added).)

As can be seen, Plaintiffs alleged they purchased insurance from CSAA. Plaintiffs joined the Exchange under the doctrine of vicarious liability (or the "alter ego" doctrine).

---

[4]In the Petition, Plaintiff defined "AAA" as "CSAA Fire and Casualty Insurance Company d/b/a AAA Fire and Casualty Insurance Company. Plaintiffs defined "CSAA" as "CSAA Insurance Exchange".

Now, faced with the realization that their allegations regarding the relationship between AAA Oklahoma and CSAA have no merit, Plaintiffs seek to morph their status as CSAA policyholders into Exchange subscribers. The Court should not fall prey to these bait-and-switch tactics. The evidence presented clearly demonstrates Plaintiffs purchased insurance from CSAA. (*See* Certified Policy and Declaration Pages [Dkt. No. 1-15].)

Plaintiffs also argue that AAA Oklahoma's handbook plainly states that "AAA services are for Members only" and that it is undisputed that homeowners' insurance is a part of AAA services offered to members.[5]  The quotation Plaintiffs excised from the AAA Oklahoma handbook, while accurate, is notably selective and misleading.  Plaintiffs quote from the first section entitled "Membership Defined".  That section states:

**1. Membership Defined**

AAA services are for Members only.

*          *          *

**AAA Oklahoma provides three levels of Membership:**

**Classic**
The Classic Membership entitles members to receive all of the
member benefits explained on pages 6 through 13.

**Plus RV**
AAA Plus® RV offers members expanded Emergency Road
Service and many other
AAA services (see page 10-13 for more details).  Each
household member associated
with the Primary member who has AAA Plus® RV must also
have AAA Plus® RV.  AAA Plus® RV can be added to your

---

[5] The CSAA Defendants vehemently deny the assertion that CSAA insurance is a AAA service for members only.

membership for an additional cost. Contact AAA Oklahoma at 1-866-877-2450 for rates.

**Premier RV**
AAA Premier® RV takes membership to the next level. Extended benefits offer more assistance when traveling in the U.S. or abroad. For detailed information refer to the special section beginning on page 13. Each household member associated with the Primary member who has AAA Premier® RV must also have AAA Premier® RV. AAA Premier® RV can be added to your membership at an additional cost. Call AAA at 1-866-877-2450.

(AAA Oklahoma handbook [Dkt. No. 9-3], p. 5 (added).)

 As can be seen, the AAA services offered only to Members are described on pages 6-13 of the handbook (section 4, pp. 13-18, describes the extended benefits offered only to AAA Premier® RV Members).  Homeowners' insurance is not one of the enumerated services offered only to AAA Oklahoma members.  (AAA Oklahoma handbook [Dkt. No. 9-3])  Rather, "Insurance" is its own section beginning on page 18.  Nothing in that section states membership is required to procure an insurance policy from CSAA.  In fact, the AAA Oklahoma handbook makes it clear that generous discounts are available for AAA Oklahoma members.  (See AAA Oklahoma handbook [Dkt. No. 9-3], p. 18.)  If "special discounted rates" are made available to AAA Oklahoma members, it is axiomatic that membership is not a prerequisite to purchase insurance from CSAA.  Plaintiffs simply cherry-picked one favorable sentence out of the handbook hoping that the Court would overlook the limiting language that follows shortly thereafter.

 Second, because the Exchange is not licensed to issue insurance policies in the State of Oklahoma, (see NAIC Company Search Look-Up for "CSAA Insurance Exchange",

14

EXHIBIT 1; Affidavit of Dennis Spadini, EXHIBIT 2), any underwriting requirements that may be set forth in the *Rules and Regulations* governing eligibility requirements for Exchange Insurance are irrelevant. CSAA, a separate and distinct entity, sets its own underwriting requirements and guidelines. And, membership in AAA Oklahoma, or any other American Automobile Club, is not one of those requirements. (*See* Affidavit of Dennis Spadini, EXHIBIT 2.) CSAA offers homeowners' insurance to the general public and, as a courtesy, offers AAA Oklahoma members a discount of 5%. (*See* Affidavit of Dennis Spadini, EXHIBIT 2; Automobile Club of Oklahoma Website, "AAA Home Insurance", https://www.ok.aaa.com/insurance/home [Dkt. No. 1-20].) In fact, because Plaintiffs are AAA Oklahoma members they received that 5% discount.[6] (*See* Declaration Pages [Dkt. No. 1-15].)

In short, contrary to Plaintiffs' assertion otherwise, in their Removal the CSAA Defendants presented substantial evidence demonstrating that a AAA Oklahoma membership was not required to purchase insurance from CSAA. The most significant of that evidence is a certified copy of the homeowners' policy issued to Plaintiffs. As the Court is well aware, the relationship between an insured and an insurer is contractual in nature. The policy does not condition coverage on a AAA Oklahoma membership. Plaintiffs' attempt to graft this condition onto the policy is tantamount to a request that the Court rewrite the policy. But, "courts are not at liberty to rewrite the terms of an insurance contract." *Spears v. Shelter*

---

[6]Again, a simple exercise in common sense demonstrates that AAA Oklahoma membership is not required to obtain insurance from CSAA. If AAA Oklahoma membership was mandatory, CSAA's decision to offer AAA Oklahoma members a 5% discount would make no sense. The discount would be illusory.

*Mut. Ins. Co.*, 73 P.3d 865, 868 (Okla. 2003). Accordingly, Plaintiffs' Motion to Remand should be denied.

**B.     AAA Oklahoma cannot be held vicariously liable for CSAA's alleged wrongful conduct.**

*1.     Plaintiffs do not allege that AAA Oklahoma issued the subject insurance policy.*

As pointed out in the CSAA Defendants' Removal, Plaintiffs <u>do not</u> assert that they had a contract for insurance with AAA Oklahoma or that AAA Oklahoma breached a contract with them.  (*See generally*, Petition [Dkt. No. 1-2])  Likewise, Plaintiffs <u>do not</u> assert that the AAA Oklahoma acted in bad faith. (*See* Petition [Dkt. No. 1-2], ¶¶ 19-31.)

Rather, Plaintiffs allege that "Automobile Club of Oklahoma d/b/a AAA Oklahoma may be **vicariously liable** for the actions or inactions of its corporate affiliates and partners in this case." (Petition [Dkt. No. 1-2], ¶ 4.)  Plaintiffs' Petition continues stating that "CSAA, AAA and Automobile Club of Oklahoma d/b/a AAA Oklahoma operate and are part of a reciprocal insurance exchange, wherein they pool and partner their businesses under a regime of control such that all of its subsidiaries and affiliated companies can be held liable for bad faith and breach of contract." (Petition [Dkt. No. 1-2], ¶ 5.)  Thus, if Plaintiffs cannot assert a valid claim for vicarious liability (or alter ego) against AAA Oklahoma, the Court must conclude AAA Oklahoma was fraudulently joined and may be disregarded for the purposes of diversity jurisdiction. *See Dodd*, 329 F.2d at 85.

16

2.    *AAA Oklahoma is not a subsidiary of the Exchange and is a stranger to the insurance contract at issue.*

"Vicarious liability is imposed by law when one person [entity] is made answerable for the actionable conduct of another." *Braden v. Hendricks*, 695 P.2d 1343 (Okla. 1985). In *Nadeau v. Merlin*, 110 N.W.2d 29 (Minn. 1961) (cited with approval by the Oklahoma Supreme Court in *Braden*), the court explained:

> Vicarious liability is based on a relationship between the parties, irrespective of participation, either by act or omission, of the one vicariously liable, under which it has been determined as a matter of policy that one person should be liable for the act of the other. Its true basis is largely one of public or social policy under which it has been determined that, irrespective of fault, a party should be held to respond for the acts of another.

*Id.* at 375-76 (citing Prosser, Torts (2d ed.) c. 12; Laski, The Basis of Vicarious Liability, 26 Yale L.J. 105).

Plaintiffs assert that AAA Oklahoma can be held liable for CSAA's alleged wrongful conduct because it is under the operation and control of the Exchange. However, like every other argument presented in Plaintiffs' Motion, Plaintiffs do not present a shred of evidence that actually supports their argument. For example, Plaintiffs assert that "[b]ased on the Exchange's corporate structure as set forth in Doc. 1-17, which was not publically available to Plaintiffs when the lawsuit was filed, it is now readily apparent that AAA and AAA Oklahoma operate under the umbrella of the Exchange and these entities associate themselves together."[7] (Plaintiffs' Motion [Dkt. No. 9], p. 9.) But, the Annual Statement

_____

[7]Contrary to Plaintiffs' assertion this document was available to them prior to the filing of this lawsuit. All Plaintiffs had to do was request CSAA's Annual Statement from the Department of Insurance.

17

and accompanying Schedule Y that the CSAA Defendants attached to their Removal does not reference AAA Oklahoma. This is because neither the Exchange nor its subsidiaries have any ownership interest in AAA Oklahoma.

Next, Plaintiffs assert that AAA Members Services, LLC, a wholly owned subsidiary of the Exchange, "encompasses several AAA clubs, including AAA Oklahoma." (Plaintiffs' Motion [Dkt. No. 9], p. 9.) In support of this assertion, Plaintiffs cite to an archived news release found on AAA Oklahoma's website, which states that "AAA Member Services Company **represents** several AAA clubs throughout the West and Midwest in exploring innovative ways to better and more effectively serve AAA members." (AAA News & Safety [Dkt. 9-4].) But, the article does not state that AAA Member Services Company *owns* AAA Oklahoma or any other American Automobile Association club. It appears Plaintiffs misread the article and substituted the word "owns" for "represents". The fact is, AAA Member Services Company, a now dormant entity, contracted to provide call center services to AAA Oklahoma. (*See* Affidavit of Dennis Spadini, **EXHIBIT 2**.) AAA Member Services Company does not, however, have any ownership interest in AAA Oklahoma. (*See* Affidavit of Dennis Spadini, **EXHIBIT 2**.)

Relying on a **2006** interview of James Pouliot, Plaintiffs further assert that "several years ago, multiple auto clubs, including AAA Oklahoma, were merged within one of the Exchange's holding companies, which is believed to be AAA Member Services, LLC." (Plaintiffs' Motion [Dkt. No. 9], pp. 9-10.) Again, Plaintiffs' assertions are based on half truths and unfounded conjecture. Plaintiffs are correct in stating that multiple American

Automobile Association clubs were merged into a single holding company.  That holding company was AAA Club Affiliates (now AAA Club Partners), not AAA Member Services, LLC. (*See* Affidavit of Dennis Spadini, **Exhibit 2**; AAA promotes Paula Downey to CEO, **Exhibit 4**.)  In 2011, or four (4) years before Plaintiffs' homeowners' policy was issued, the insurance business and the nonprofit American Automobile Association split into two separate entities. (*See* Affidavit of Dennis Spadini, **Exhibit 2**; AAA unit splits off nonprofit club, **Exhibit 5**; Company Overview, *"Our Story"*, http://csaa-insurance.aaa.com/content/aaa-ie/b2c/en/primary-nav/company-overview.html, **Exhibit 6**.)

In short, the Exchange has no ownership or control over AAA Oklahoma.  AAA Oklahoma merely markets CSAA's insurance products to its members and the general public. (*See* Affidavit of Dennis Spadini, **Exhibit 2**; American Automobile Association, AAA Insurance Fact Sheet [Dkt. No. 1-19], p.1, obtained from http://newsroom.aaa.com/wp-content/uploads/2014/03/Insurance_Facts_2012.pdf.)  The CSAA Defendants are now compelled to state the obvious – *i.e.*, AAA Oklahoma, as the procuring agent, is not a party to the insurance contract at issue.  Therefore, AAA Oklahoma cannot be held liable for an alleged breach of the insurance contract.  Similarly, because the duty of good faith and fair dealing arises from the contractual relationship of the parties to an insurance agreement, AAA Oklahoma cannot be liable for an alleged breach of the duty of good faith and fair dealing.

In the case of *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907 (Okla. 1982), the Oklahoma Supreme Court recognized that "non-insurer defendants" are not subject to the implied duty of good faith and fair dealing. *Id.* at 912 (quoting *Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032 (Cal 1973)). Similarly, in a more recent case of *St. Paul Reinsurance Co. v. Club Services Corp.*, 2002 WL 203343 (10th Cir. 2002) (unpublished), an insurance company sued the insurance agent in an attempt to recover amounts that the insurer paid to settle a bad faith claim brought against it by a purported insured. In dispensing of the case, the Tenth Circuit Court of Appeals stated:

> The district court relied primarily on two cases establishing that, in Oklahoma, agents like Mr. Martin and Club Services cannot be liable for breach of the covenant of fair dealing. *See Hayes v. Jackson National Life Ins. Co.*, 105 F.3d 583, 590 (10th Cir. 1997) ("under Oklahoma law, the alleged knowledge and acts of the agent at the time of the application [are] not imputed to the principle for purposes of determining whether the principal acted in bad faith"); *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 912 (Okla. 1982) (holding that an agent, as a stranger to an insurance contract, cannot be held to breach an implied covenant of fair dealing). We agree with the district court that Mr. Martin and Club Services cannot be held liable for any bad faith attributable to St. Paul in dealing with Ms. Wilson.

*Id.* at 836 (emphasis added).

Based upon this authority, any attempt to assert claims for breach of contract or bad faith against AAA Oklahoma is patently misplaced. Accordingly, Plaintiffs have not and cannot state a valid claim against AAA Oklahoma. *See United Adjustment Services, Inc. v. Professional Insurors Agency, LLC*, 307 P.3d 400, 405 (Okla. Ct. App. 2013) ("Oklahoma law clearly provides that an insured cannot bring a bad faith claim against an insurance

agency or its agent because they are not parties to the insurance contract.")  For the same

reasons, any attempt assert claims against AAA Oklahoma based upon the principles of

agency must fail.  Thus, AAA Oklahoma may be disregarded for purposes of diversity

jurisdiction.

3.       *Plaintiffs cannot state a valid claim based upon the doctrine of "piercing the corporate veil."*

Finally, relying on cases such as *Fraizer v. Bryan Memorial Hosp. Authority*, 775 P.2d

281 (Okla. 1989), Plaintiffs assert they may state a claim against AAA Oklahoma based upon

the doctrine of "piercing the corporate veil."  However, any claim based upon this doctrine

must fail.

First, in *Fraizer*, the Oklahoma Supreme Court directed the courts to consider the

following factors in ruling on an "alter ego" claim:

> 1) the parent corporation owns all or most of the subsidiary's stock, 2) the corporations have common directors or officers, 3) the parent provides financing to its subsidiary, 4) the dominant corporation subscribes to all the other's stock, 5) the subordinate corporation is grossly undercapitalized, 6) the parent pays the salaries, expenses or losses of the subsidiary, 7) almost all of the subsidiary's business is with the parent or the assets of the former were conveyed from the latter, 8) the parent refers to its subsidiary as a division or department, 9) the subsidiary's officers or directors follow directions from the parent corporation and 10) legal formalities for keeping the entities separate and independent are observed.

*Id.* at 288.

These factors demonstrate that if the allegedly dominate entity holds no ownership

interest in the allegedly subservient entity, an "alter ego" claim is a non-starter.  AAA

Oklahoma is not a subsidiary of the Exchange, CSAA or any of the Exchange's subsidiaries. (*See* Affidavit of Dennis Spadini, EXHIBIT 2.) Thus, as a matter of law, any claim based on the doctrine of "piercing the corporate veil"/"alter ego" fails.

Second, assuming, *arguendo*, the Exchange was the parent company of AAA Oklahoma, the doctrine of piercing the corporate veil is inapplicable in the case. Plaintiffs are asking the Court to hold one allegedly subservient entity (AAA Oklahoma) liable for alleged wrongful conduct of another allegedly subservient entity (CSAA) simply because they allegedly have a similar parent company. Plaintiffs have not cited to a single authority supporting the legal hopscotch they ask the Court to play. Rather, Plaintiffs rely solely on cases addressing the parent-subsidiary relationship. However, Plaintiffs do not assert CSAA is the parent company of AAA Oklahoma.

Finally, 12 O.S. § 682(B) explicitly prohibits Plaintiffs from bringing any claim against AAA Oklahoma under the doctrine "piercing the corporate veil"/ "alter ego" at this time. That statute provides in pertinent part:

> B. No suit or claim of any nature shall be brought against any officer, director or shareholder for the debt or liability of a corporation of which he or she is an officer, director or shareholder, until judgment is obtained therefor against the corporation and execution thereon returned unsatisfied. This provision includes, but is not limited to, claims based on vicarious liability and alter ego. Provided, nothing herein prohibits a suit or claim against an officer, director or shareholder for their own conduct, act or contractual obligation arising out of or in connection with their direct involvement in the same or related transaction or occurrence.

No judgment has been entered against CSAA. Therefore, there is not an unsatisfied verdict against CSAA. Accordingly, any attempt to hold any entity, other than CSAA, liable for CSAA's allegedly wrongful conduct under the doctrines of vicarious liability, alter ego, *etc.*, fails as a matter of law.

**C.     *The answers filed by AAA Oklahoma in other breach of contract, bad faith lawsuits are irrelevant to this lawsuit.***

Finally, Plaintiffs argue that AAA Oklahoma has filed answers in other breach of contract, bad faith actions and, therefore, their claims must be valid. Plaintiffs further contend that "AAA, the Exchange and AAA Oklahoma obviously thought those plaintiffs had viable claims against them or it would not have filed answers and would have attempted removal." Plaintiffs' assertions have no merit.

First, as the Court is well aware, the decision to invoke the right of removal is not based solely upon whether the right exists. And, a party's decision to forego the right of removal says nothing about the perceived merits of the claims asserted. The decision to invoke the right of removal is based on numerous factors including: what county the lawsuit is originally filed in, the federal court that will obtain jurisdiction over the case after removal, counsel's familiarity with and preference for state or federal court, the type of allegations asserted, *etc.* Plaintiffs' suggestion that the CSAA Defendants decided to forego their right of removal in other unrelated lawsuits because they perceived the claims against AAA Oklahoma were meritorious is utter nonsense.

Next, Plaintiffs fail to inform the Court that in every lawsuit referenced in their Motion, AAA Oklahoma explicitly denied the plaintiffs' allegations that potential insureds

23

were required to become members of AAA Oklahoma before they could purchase insurance from CSAA. AAA Oklahoma also denied the plaintiffs' allegations that the Exchange or CSAA was the parent company of AAA Oklahoma and that AAA Oklahoma was a part of a reciprocal insurance exchange. Likewise, in each of those lawsuits, the CSAA Defendants denied those allegations. (*See* Answer of ACA Insurance Company, *Latta v. CSAA Insurance Exchange*, Cleveland County CJ-13-1503, **EXHIBIT 7**; Answer of CSAA Insurance Exchange and ACA Insurance Company, *Bond v. CSAA Insurance Exchange*, Oklahoma County CJ-14-2244, **EXHIBIT 8**; Answer of ACA Insurance Company, *Jones v. ACA Insurance Company*, Cleveland County CJ-2013-1076, **EXHIBIT 9;** *Booth v. ACA Insurance Company*, Cleveland County CJ-13-1239, **EXHIBIT 10**.) Simply put, if anything, the answers Plaintiffs attach to their Motion solidify propriety of the CSAA Defendants' Removal based on the doctrine of fraudulent joinder.

Plaintiffs also attach two Orders denying AAA Oklahoma's Motions to Dismiss. Plaintiffs argue that these Orders demonstrate that "cognizable claims recognized under Oklahoma had been pleaded." (Plaintiffs' Motion [Dkt. No. 9], p. 13.) However, in ruling on a motion to dismiss, the court is required to take all well pleaded factual allegations as true and the court may not consider evidence outside the pleadings. On the other hand, in ruling on fraudulent joinder, the Tenth Circuit has directed courts to "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Dodd*, 329 F.2d at 85 (10th Cir. 1964) (citations omitted). Here, the CSAA Defendants have presented substantial *admissible* evidence demonstrating they do not have any ownership

interest in AAA Oklahoma, and therefore, AAA Oklahoma cannot be held vicariously liable for CSAA's alleged wrongful conduct.  Plaintiffs have not presented a shred of evidence, admissible or otherwise, to the contrary.  Instead, Plaintiffs request the Court remand this lawsuit based solely on unfounded speculation, half truths and misrepresentations of the record.  Plaintiffs' Motion should be denied.

CONCLUSION

Plaintiffs present two arguments in support of their request for remand.  Plaintiffs argue that (1) diversity is lacking because the Exchange is a citizen of the State of Oklahoma and (2) they have asserted valid claims against AAA Oklahoma under the doctrines of vicarious liability and/or "piercing the corporate veil."  However, the record demonstrates that Plaintiffs fraudulently joined AAA Oklahoma for the sole purpose of defeating diversity jurisdiction, and ignoring AAA Oklahoma, complete diversity exists.  Specifically, the record demonstrates (1) the Exchange is not a citizen of the State of Oklahoma; (2) Plaintiffs have not "obtained Exchange insurance"; (3) Defendant AAA Oklahoma is not owned by the Exchange or its subsidiaries; and (4) Plaintiffs did not have to obtain a AAA Oklahoma membership to purchase insurance from CSAA.  Accordingly, the Court should dismiss AAA Oklahoma from this lawsuit, deny Plaintiff's Motion to Remand and retain jurisdiction over this action.

Respectfully submitted,

*s/ Erin J. Rooney*
Gerard F. Pignato, OBA No. 11473
Erin J. Rooney, OBA No. 31207
PIGNATO, COOPER, KOLKER &ROBERSON, P.C.
Robinson Renaissance Building
119 North Robinson Avenue, 11th Floor
Oklahoma City, Oklahoma 73102
Telephone:   405-606-3333
Facsimile:   405-606-3334
Email: Jerry@pclaw.org;erin@pclaw.org
ATTORNEYS FOR DEFENDANTS,
CSAA INSURANCE EXCHANGE AND
CSAA FIRE AND CASUALTY INSURANCE
COMPANY, d/b/a AAA FIRE AND
CASUALTY INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Reggie N. Whitten, Esquire
Michael Burrage, Esquire
J. Revell Parrish, Esquire
John L. Branum, Esquire

*s/ Erin J.  Rooney*
For the Firm

26